## E. B. GASTON, SON & CO. *v.* SHELBY KING.

ATTORNEY AND CLIENT. *Purchase of land by former. Trust in respect thereto. Enforcement thereof. Improvements and rents.*

K. sold a certain tract of land to one J. on a credit. M. was employed as attorney to foreclose the vendor's lien thereon. He obtained a decree, the land was sold thereunder in 1869, and M. became the purchaser in his own name. The costs of suit were paid by M. in money, and the remainder of the price bid was credited on the decree. During the progress of the foreclosure suit, M. obtained a perpetual injunction against a certain judgment creditor of K., to prevent him from selling the land in question under his judgment. In 1881 M. wrote to K., who was a non-resident, telling him of the above steps taken by him in relation to the land, and stating that he bought it to prevent a sacrifice of it, and to secure the fees due him and advances made by him in paying court costs and redeeming the land from a sale for taxes, and he offered to convey the land to K. upon the payment by K. of the amount due him. In 1882, M. again wrote to K., offering either to convey or to purchase, and urging a settlement of some sort. But K. neither accepted the terms nor offered any. In 1883 M., being financially pressed, conveyed this land to his creditor, G., whom he informed fully of the circumstances of the case, and M. reserved the right to repurchase for K. G. took possession, and made certain necessary repairs and improvements on the land. In 1884 K. filed a bill against M. and G. to have them declared trustees, and to compel them to account for the rents and profits. The Chancellor declared the defendants trustees, allowed M. a fee for services in enforcing the vendor's lien, and the sums expended by him in court costs and taxes, but declined to allow him a fee for enjoining the execution, and refused to allow G. anything for repairs and improvements, but charged him and M. with a reasonable rental without regard to what was received by them. *Held,* that it was proper to fix on defendants the character of trustees, but they ought to have been allowed compensation for repairs and improvements made before the filing of the bill, to the extent that value was thereby added to the property, not to exceed in any event the cost of such repairs and improvements; and they should have been charged with such rents only as were actually received by them prior to the filing of the bill.

APPEAL from the Chancery Court of Jasper County.

HON. T. B. GRAHAM, Chancellor.

The case is stated in the opinion of the court.

*E. Watkins,* for the appellants.

The Chancellor erred in fixing the character of trustee on defendants and in compelling Gaston, Son & Co. to give up their title. In *Johnson* v. *Outlaw,* 56 Miss. 546, the court at length discusses the relation between client and attorney and lays down the rule which seems to us to fit this case exactly. " The lawyer shall not antagonize his client if he buys property upon which his client has a claim and in relation to which he has in any manner assumed a professional connection. It is for the client alone to say whether he will claim the benefit of the property or not." But the court did not stop there, and we do not controvert that proposition. It goes further and says : " It is evident that while the law gives to the client this ample protection, it must devolve upon him the reciprocal obligation of promptly notifying the attorney that he proposes to claim it. As soon, therefore, as he learns that the attorney has purchased for himself, he must at once exercise his election of claiming it. This duty will be especially incumbent where there has been no moral turpitude, and where delay will affect the position of the parties and the value of the property. Five years and a-half intervened between the purchase by Outlaw and the bringing of this suit, during all of which time Johnson failed to assert directly the present claim. In the meantime the land had advanced in value."

Now we would ask the court if the case at bar does not come up to the standard of this case. Surely there was no moral turpitude on the part of McGee when he voluntarily informed complainant of his acts and said he was ready to convey to him. Five years elapsed between the purchase by McGee and the filing of this bill. During all this time complainant has failed directly or indirectly to assert his present claim. In this it is a stronger case than the case of *Johnson* v. *Outlaw, supra.* McGee states that after urging complainant for a long time to take the property, and he at no time consenting, he (McGee) sold to E. B. Gaston, Son & Co., who say that they bought of McGee relying on the actions of complainant and believing that he acquiesced in all that McGee

had done ; that they were informed that McGee had written complainant time and again, and that complainant had neglected all the time to do his duty in the premises, and, acting solely upon the faith of the conduct of complainant in the premises, they bought of McGee and improved the land.   In *Scott et al.* v. *Freeland,* 7 S. & M. 409, the same principle is announced by the court.

If the decree of the court below was correct in declaring defendants trustees, then the Chancellor ought to have made a decree allowing defendants pay for substantial and permanent improvements made on said land while they had possession of the same. It is not conscionable and equitable to allow complainant, in this case, to remain silent while defendants, Gaston, Son & Co., were making said place valuable with permanent improvements, and then claim the lands thus improved.  Surely this court would allow defendants pay for the same.   They made the improvements in perfect good faith, relying implicitly upon complainant's silence in this matter, hence they ought to be allowed pay for the same.

The learned Chancellor decreed that defendants should pay reasonable rents.   I submit that the decree should have been, if correct at all, to compel McGee as agent and attorney to pay over all rents collected by him while the lands were under his charge, and then to compel E. B. Gaston, Son & Co. to pay reasonable rents for the same during the time they controlled it.

*S. B. Watts,* for the appellee.

1. If McGee, co-defendant of appellants in the court below, was, at the time of his purchase of the land in controversy at commissioner's sale, acting as the attorney of appellee, and appellants purchased from McGee with notice, actual or constructive, of the relation between McGee and King, then there was no error in the decree referred to in the first assignment.

2. It is contended by counsel for appellant that appellee, by his long silence, acquiesced in the act of his attorney, McGee, and that not having instituted his suit within a reasonable time, cannot be heard now.   As said by this court in *Scott* v. *Freeland,* 7 S. & M., what is an unreasonable delay in assertion of claims by a beneficiary cannot be accurately laid down ; each case must be gov-

erned by its own circumstances.   See also *House* v. *Harden*, 52 Miss. 860.

3. There was no error in the action of the court below in refusing Gaston & Co. compensation for improvements.  A trustee, nor his vendee, is not entitled to compensation for improvements unless he shall claim under a deed made or acquired in good faith. Code 2512; Willard's Eq. Jur. 308–312; 60 Miss. 169.  Even if the Gastons were entitled to compensation for improvements on the land, there was no evidence that any improvements were put on the land.  Affirmative allegations of an answer must be proved. 12 S. & M. 438; 43 Miss. 383; 47 Miss. 645–6; 52 Miss. 483; Ib. 569; 57 Miss. 626.  No testimony was taken by defendants in the court below.

4. The court did right in requiring defendants in the court below to pay reasonable rents, to be ascertained by testimony. There was no contract as to rents, and there was no evidence showing " exactly what rents they received."  Even if that was the correct rule, appellants cannot complain in this court of the report of the master.  No exceptions were filed.

I submit that the action of the court below was right in every particular.

COOPER, C. J., delivered the opinion of the court.

The facts of this case as they appear in the record are that the appellee was at one time the owner of a certain farm in the county of Jasper, which he sold on credit to one Jones, who died insolvent, and owing some four thousand dollars of the purchase-money. The appellee employed the firm of Evans & Smith, attorneys-at-law at Meridian, to collect the debt due him by Jones.  Evans was also the partner in the practice with the defendant McGee, to whom was sent the bill to foreclose appellee's lien on the land, and he procured a decree for its sale.  At the sale, which was made in August, 1869, the land was struck off to McGee at the price of six hundred dollars, and a deed made to him by the commissioner.  He paid no part of his bid except about fifty-three dollars, which was applied to the payment of costs of suit, the remainder of the bid being settled by a credit on the decree.

Pending the litigation to enforce the vendor's lien, a judgment creditor of the appellee had issued an execution and caused it to be levied on the land, and McGee, the attorney, to protect the property from sale, sued out in appellee's name an injunction, which on final hearing was made perpetual. The appellee, who was during all this time a non-resident, had no knowledge of this injunction suit until informed of the same by a letter written by McGee in February, 1881. In this letter McGee gave to his client full information as to all the steps which had been taken, explaining that he had not sooner communicated with him by reason of the fact that he was not able to learn the post-office of appellee. He stated to him that he had bought in the land to prevent a sacrifice of it and to secure himself for advances made in payment of court costs and for money paid out in redeeming the land from a sale for taxes, and also to secure the payment of the fees due to his firm for the services rendered in the injunction suit and in the suit to foreclose the lien. In this letter he stated to the appellee that the place was out of repair and that but a small sum had been realized from its rent. He offered to convey to the appellee upon payment of the sums due him and declared that he did not desire to become the owner of the property. The letter of appellee in reply does not appear in the record, but McGee testifies (and no attempt is made to contradict him in any respect) that the complainant in none of his letters recognized him as having been his attorney, but claimed that his contract had been with Judge Evans, and that he had received from Evans & Smith a bill for the services charged by McGee in his account. He complained of the amount of the fees but made no offer to repay any of the money expended by the attorney, nor, so far as is shown, did he offer to pay the fees either to McGee or to Evans. In 1882 McGee wrote again to the complainant calling his attention to the condition of affairs, pressing for a settlement of some sort, and offering either to convey the land upon payment of his charges, or to pay complainant a certain sum and accept a deed from him. In February, 1883, McGee, being financially embarrassed, conveyed the lands to Gaston & Co. in payment of a debt due by him to them; he informed them

fully of all the circumstances of his purchase and reserved the right to repurchase the land within a specified time. Gaston & Co. having purchased the property made certain repairs and improvements on it, consisting of repairs on houses and fences, building new cabins and fences, breaking land, etc. In 1884 the complainant exhibited this bill against McGee and Gaston & Co. to have them declared trustees of the land for him and for an account of the rents and profits received by them or which might have been had by the use of due diligence. The Chancellor by his decree declared the parties trustees as prayed; he allowed to McGee a fee of two hundred dollars for services in enforcing the vendor's lien, and disallowed the fee for enjoining the execution sale; he allowed all sums expended in payment of court costs and taxes, and disallowed all claims for expenditures made in repairing or improving the property, and charged against the defendants the reasonable rental value of the property, without regard to what was actually received by them. From this decree Gaston & Co. appeal.

It will be seen from this statement of the facts that the relation of McGee to the land was such that he might at the election of the complainant be treated either as owner or as trustee for complainant. By his bid and acceptance of the conveyance from the commissioner he had assumed the position of owner, and might have been held to that relation, but was subject to have it repudiated by his client acting in good faith and within a reasonable time after notice of all the facts connected with the purchase. In February, 1881, he notified the complainant of all that had been done, and recognized his right to elect whether he would take the land, paying the charges which he held against it, or would confirm the sale and take the purchase-money due. To this the complainant gave no definite response, but protested that the charges were unreasonable, and that nothing was, in fact, due to the attorney; subsequent communications resulted in the same manner, and for more than two years the attorney held the property, not knowing whether he was owner or trustee, and then, being pressed by his creditors, conveyed the land to some of them, giving full notice of

the condition of the title, and reserving the right to redeem if the client should elect to take the land instead of the purchase-money. Another year elapsed, during which permanent and valuable improvements were placed upon the property which are of that character that were necessary to be made to render the place remunerative as a farm, to which use it alone can be devoted. We recognize the rule in its full extent that a trustee cannot improve the beneficiary out of the estate, and that the utmost good faith is required in the dealings of an attorney with the estate of his client, but the client is not, by virtue of his relation as such, relieved from the duty of so acting as that the attorney shall not suffer injury, or be misled to his prejudice. To permit the complainant now to fix upon the owner the character of trustee and to take the property in its improved condition without making compensation therefor would be to give him not his own but the property of the occupant, put upon the land at a time when he was not trustee but only liable to be converted into one by the election of one who had already had more than two years in which to determine whether he would confirm or repudiate the purchase.

While the equitable maxim, that he who seeks equity must do equity, is not to be so extended as to impose upon the complainant the obligation of performing mere moral duties, and is to be applied only for the protection of the substantive rights of the defendant, it is nevertheless proper to consider all the circumstances surrounding the case to determine what are the substantive rights of the defendant, and where, as in this case, the complainant has, with full knowledge of all the facts, failed to make his election for three years, and during the last of those years the improvements are put upon the property, he ought not to be permitted to take the property in its improved condition without making compensation to the extent of the added value given to it by such improvements.

While under the circumstances of this case the delay of the complainant has not been such as to preclude him from fixing upon the holders of the legal title the character of trustees, they should be protected by allowing them compensation for their improve-

ments to the extent that value has thereby been added to the property, not to exceed in any event the actual costs of such improvements; and that only such rents be charged against them for their occupancy of the property prior to the exhibition of complainant's bill as were actually received by them, or by McGee, the first purchaser. No allowance should be made for improvements put upon the land after the bill was filed, and such rents should be charged for the premises subsequent to that time as would have been realized by a provident owner; for, when the complainant proceeded against them they then knew that he had elected to treat the purchase as one for his benefit and the occupants as trustees.

It is not shown by the evidence that the injunction suit was necessary for the protection of the lands, and the fee for services rendered in that suit were properly disallowed. In all other matters except those herein referred to the decree is correct. We note the objection made by appellee that there is no proof of the improvements claimed by the defendants or their value, but this omission is attributable to the fact that the Chancellor, in settling the principles on which the account should be taken, denied the defendants' compensation therefor, and it was therefore unnecessary to take proof on that subject.

*The decree is reversed, and cause remanded to be further proceeded with in accordance with this opinion.*