## S. L. UHLER ET AL. *v.* W. F. ADAMS.

CREDITOR'S BILL.   *Equities of creditors.   Suspicious circumstances.   Holder
    of legal title a mortgagee not in possession.*

In a proceeding in equity to subject a plantation to the payment of
    a judgment on the ground that the title was held in trust for the
    debtor who was alleged to use the property as his own, and to be,
    in fact, the beneficial owner, it was determined, on appeal, that the
    debtor was also indebted to the holder of the legal title at the
    time of the transaction complained of; that the case was one of
    suspicious circumstances merely, and that the holder of the legal
    title should be treated as a mortgagee not in possession and have
    priority of payment to the actual extent of his indebtedness out
    of the proceeds of the property when sold under the decree ap-
    pealed from—the decree being reversed in so far as it denied him
    such priority, and the cause remanded for an accounting to ascer-
    tain the amount of his indebtedness.   On the accounting thus or-
    dered, the holder of the legal title, who reasonably and honestly

believed that he owned the property, should be credited with all sums advanced by him for the improvement of the plantation and to carry on the business thereof, and also such other money as he advanced to the debtor in part before and in part shortly after the transfer to him of the mortgage under which he acquired title, that entered into the consideration of such transfer, and should be debited with all rents and other proceeds actually received from the property.

FROM the chancery court of Madison county.

HON. H. C. CONN, Chancellor.

Until September, 1885, the appellant, S. L. Uhler, resided in Pennsylvania, where the appellants, Anna M. Hunt, his sister, and Edward I. Hunt, his brother-in-law, still reside. On September 1, 1885, he traded his paper mill at Uhlersville, Pa., for a farm near Leesburg, Va., and borrowed $2,000 from his sister, Mrs. Hunt, to make the necessary cash payment on the trade. He was then already indebted to his sister, Mrs. Hunt, in the sum of $2,281, and to Edward I. Hunt in the sum of $1,621, and executed a mortgage on the Leesburg property to secure the $2,000 then borrowed from his sister, together with $8,000 designed to operate as indemnity against an existing mortgage on the Uhlersville property. He also executed, at the same time, a second mortgage to secure the payment of the $2,281 and $1,621 due as above stated, and, removing to Virginia, carried on the business of the farm he had acquired, and, while so doing, incurred a further indebtedness to Edward I. Hunt, on open account, of $486.26. On October 28, 1887, he traded his Leesburg property to J. P. Brinton, taking in payment a $15,000 mortgage held by Brinton on the plantation in controversy, known as the St. Mary's plantation, Brinton assuming the first mortgage on the Leesburg property. The Hunts released their second mortgage on that property, and it was agreed between them and Uhler that the Brinton mortgage for $15,000 should be assigned to them in payment of what he owed them, together with such other money as it was necessary to advance to Uhler

to enable him to close out the business at Leesburg.    The as-
signment having been made in pursuance of this agreement,
Edward I. Hunt advanced to Uhler the further sum of
$373.74 to enable him to settle his affairs at Leesburg.    Uhler
removed to Mississippi, and had the $15,000 mortgage fore-
closed, in 1888, and, at the sale under the decree of fore-
closure for the whole debt secured by the mortgage, Edward
I. Hunt purchased the property at the sum of $7,600, which
was credited on the decree, the purchase being for the joint
benefit of the sister and himself in proportion to their respective
debts.    Uhler took charge of the plantation at once, and, until
the appointment of the receiver in this cause, managed it, to all
external appearances, as if it was his own.    It is shown by the
evidence, however, that, during the whole time, Hunt ad-
vanced money to improve and operate the property, and that
Uhler remitted to him each year the rents and other proceeds
of the property, the aggregate of remittances to Uhler being
$1,839.97, and of receipts from the property, $2,208.23.    The
appellant's bill, which was filed in 1894, sought to subject the
property to his judgment for over $20,000, recovered in 1877
and revived from time to time, and charged that all the trades
and exchanges of property mentioned were but parts of a de-
sign to hinder, delay, or defraud him and defeat the collection
of his debt, and that the foreclosure of the $15,000 mortgage
and investiture of title in Hunt was but the culmination of the
scheme.    A decree was made condemning as fraudulent the
transaction whereby Hunt acquired title, and subjecting the
property to sale for the payment of appellee's debt, with direc-
tion to pay over the balance of the proceeds of sale, if any, to
Uhler.    On appeal to the supreme court, it was held that the
fraud complained of was not satisfactorily shown, but that the
case was one of suspicious circumstances, and the decree was
reversed, and the cause remanded for an accounting as to the
debts of the Hunts, who were treated as mortgagees not in
possession, and entitled to priority of payment out of the pro-

ceeds of sale, so much of the decree as directed a sale of the property and application of the proceeds to the appellee's debt, remaining undisturbed save by the priority of payment awarded to the Hunts. On the accounting, the commissioner ascertained the amount of the debts of the Hunts and the rents and profits received by Edward I. Hunt from the property, but, in reaching the result reported to the court, disallowed Edward I. Hunt credit for the disbursements he had made in improving and operating the property, amounting to the sum of $1,-839.97 without interest, and also disallowed him that part of his account for $860 against Hunt that was incurred after the assignment of the Brinton mortgage, amounting to $373.74, and debited him with the whole of the rents and profits, thereby reducing his debt to the sum of $101.73, while that of Anna M. Hunt was ascertained and stated to be the sum of $3,658.40. The account was excepted to, because Hunt was not credited with the $1,839.97 disbursed by him in the manner stated and the whole of his $860 debt. The exceptions were overruled, and the defendants appealed.

*F. B. Pratt*, for the appellants.

1. The defendant, Edward I. Hunt, should have been credited by the commissioner appointed to take the account of the debts of himself and Anna M. Hunt, with the amount of money disbursed by him in improving and operating the property. Hunt believed himself to be the owner of the property, and made the advances in good faith. No question of the application of payments, as between the secured and unsecured debts of Uhler to Hunt, can arise on the record. The appellee has no higher right than Uhler, and Uhler has consented to the application of the rents, etc., that was made—that is to say, to the payment of the advances. Story on Eq. Jur., §§ 459, *b, c, d; Hiller* v. *Levy*, 66 Miss., 32.

2. The commissioner should have allowed Hunt credit for the whole of the $860 account. The items advanced after the

assignment of the mortgage to the Hunts were in pursuance of a cotemporaneous verbal agreement, and their payment constituted a part of the consideration of the assignment.

*Nugent & McWillie*, for the appellee.

1. Uhler's answer, which was adopted by the Hunts, sets out that the $15,000 mortgage was assigned to them, or to trustees for them, in payment of the $1,621 debt due to Edward I. Hunt, and the $2,281 debt due to Anna M. Hunt; and, as we interpret the opinion rendered on the former appeal, it was held that the transaction should be treated as a mortgage to secure those debts—that is to say, the debts due at the time of the assignment. The fact that the Hunts released an existing security for these debts on the Leesburg property on taking the assignment was, we thought, influential in bringing about the result reached, and that the purpose of the court was to substitute the assignment as security for the debts released when it was taken, and no other debts. If we were correct in this, the advances made to Uhler after the assignment are debts due by Uhler to Edward I. Hunt, but not secured in any way, and he was not entitled to be credited with the same on the accounting. *Mahoney v. Bostwick*, 96 Cal., 53; *Bender v. Zimmerman*, 26 S. W. Rep., 973; *Morgan v. Morgan*, 22 Atl. Rep.; 545. When a creditor denies his character as such, and claims as owner, and, on being defeated, falls back upon his original character as creditor, he is not entitled to the favor of the courts as if he had never departed from it. *Incorporated Society v. Richards*, 1 D. & W., 334. In this case there has never been any amendment of the pleadings of the Hunts, in which they insist that they are the owners of the property. It is true that these defendants are treated as mortgagees not in possession, but we are at a loss to see upon what principle they can be held as such for subsequently contracted debts, no matter for what purpose the money was advanced. As mortgagees not in possession, they were not responsible for the repair or

profitable operation of the property. If, on the other hand, they had been treated as mortgagees in possession by their agent, Uhler, they might have made claim for such expenditures, but the inquiry as to rents and profits would have been opened, and they would have been held not only for all that they actually received, but as well for all such as they might have received by proper management of the place.

2. It is true that Edward I. Hunt stated that the whole of his $860 account entered into the consideration of the assignment, but Uhler's answer, which he adopted, stated that the $2,281 due Anna M. Hunt, and the $1,621 due to Edward I. Hunt, constituted the consideration of that transfer, and an examination of the account, which was made up of small sums advanced to Uhler from time to time, shows that the greater part of it had no existence for months after the assignment, and a small portion of it for more than a year afterwards.

Argued orally by *F. B. Pratt*, for the appellants, and by *W. L. Nugent*, for the appellee.

Woods, J., delivered the opinion of the court.

On the former appeal in this case we held that E. I. Hunt and Anna M. Hunt must occupy the position of mortgagees not in possession. The case, as then presented, left us doubtful as to their claim of title of ownership in St. Mary's plantation, and, while we declined to recognize their absolute ownership of the property, we did fully recognize their debts against Uhler and their right to satisfaction of the same by a sale of the place for that purpose. We advisedly made them, *in invitum*, mortgagees not in possession, in order that their debts might not be consumed by the rental value of the place. Uhler was left by our former decree as the owner in possession, and with the right to the rents of the place. While thus in possession, E. I. Hunt, under an honest and reasonable conviction of his and Anna M. Hunt's absolute title to the plantation, made

advances in money, from time to time, in the aggregate sum of $1,839.97, for the purpose of improving and having cultivated said plantation. During this period E. I. Hunt received from the plantation cash aggregating the sum of $2,208.23. These disbursements and reimbursements were made and received, as already stated, in the management and cultivation of the plantation reasonably and honestly believed by him to be the property of himself and his co-respondent, Anna M. Hunt. Nor have E. I. or Anna M. Hunt, voluntarily, ever abandoned their original contention and position. By the former decree of this court, they have been compelled to assume another attitude in this litigation, but, under all the circumstances of the case, it was our purpose to free them from liability for the rental value of the plantation, and at the same time to charge them for all sums actually received therefrom and to have them credited with the amounts advanced by them thereto. This is clearly agreeable to good conscience, and works out absolute justice to all parties. Substantially this was the rule observed and approved in *Hester* v. *Thompson* (58 Miss., 108), and, by our reference to this case in our former opinion, we designed to intimate that the rule there should be applied here in the accounting.

E. I. Hunt should have been credited with the $1,839.97 advanced by him, and should have been debited with the $2,-208.23 received from the plantation, and the true balance thus found be made a charge against him.

The whole amount of Uhler's unsecured indebtedness, to wit, $860, to E. I. Hunt, is clearly shown to have been part of the consideration of the assignment of the Brinton mortgage, and this sum, with interest, should have been computed as part of E. I. Hunt's debt, and not the sum of $486.26, as was done in the court below.

As the only remaining contention on the present appeal is embraced in the two points just determined by us favorably to E. I. Hunt, and as the added evidence in the new record seems

full and complete, a final decree may be entered here in accordance with this opinion, if the parties so desire.