JOSEPH B. BAIRD ET AL. v. BARTHOLOMEW McNAMARA, GUARDIAN, ETC.

1. LEVEE TAX SALES. *Infants. Redemption. Laws* 1858 (*special session*), *p.* 33.

   An infant whose lands were sold for levee taxes under the act approved December 2, 1858 (laws, sp. ses., 1858, p. 33), may redeem the same within two years after the sale, on the same terms permitted to adults, and may afterwards, within the time permitted to infants, redeem the same by paying, in addition, six per centum interest per annum thereon to time of redemption and all taxes paid by the purchaser after two years from the sale, with like interest on each payment.

2. SAME. *Improvements. Rents.*

   Under said statute the tax purchaser is entitled to be paid the value of improvements put on the land by him before suit brought to redeem, but not of those put there afterwards ; and the infant is entitled to the fair rental value of the land, as improved, after suit begun, but is not entitled to rents before that time.

FROM the chancery court of Sunflower county.

HON. A. MC. KIMBROUGH, Chancellor.

Bartholomew McNamara, guardian of F. X. Leroy McNamara, the appellee, was the complainant in the court below; Baird and others, the appellants, were defendants there. The suit was once before in the supreme court, and is reported, although the docket styles are not identical. *McNamara* v. *Baird*, 72 Miss., 89. The court below, in ordering an accounting by its decree, directed that defendants should not be charged with rent of the land before the beginning of the suit to redeem. The facts are otherwise sufficiently apparent from the opinion of the court.

*Frank Johnston,* for appellant.

The redemption of the liquidating levee tax title under the tax sale of May 11, 1871, can only be made under the terms

of the act of December 2, 1858, which provides for the payment of the purchase money, with all subsequent taxes due thereon, and fifty per centum per annum interest on the whole amount. There can be no rule outside of the statute fixing the terms of the redemption. The statute requires all of the taxes to be repaid, and with equal clearness and precision of expression it further declares that interest, at the rate of fifty per centum per annum, shall be paid on all the taxes, including the tax for which the land was sold. The fifty per centum does not stand as damages to be computed but once on the taxes, but in the clearest and most unambiguous and unmistakable terms, the statute declares that the rate of interest shall be fifty per centum per annum on the taxes—that is, for each and every year. Nothing can be clearer.

The basis of the redemption cannot be affected or changed because of the fact that it is affected through a bill to redeem. The statutory right of redemption and the statutory conditions upon which the redemption may be had, constitute one entire and indivisible whole. When a complainant files a bill to redeem, the defendant, the owner of the tax title, may contest his right to redeem without losing his own right to the taxes and interest, which the statute declares shall be refunded to him upon redemption. When the right to redeem is adjudged in favor of the complainant, the parties must necessarily stand in the same attitude in regard to the basis upon which the redemption must be made, as if the right to redeem had not originally been controverted. It is obvious that there cannot be two different rules fixing the basis of redemption. The statutory rule is exclusive, and it contains no exceptions. The right of redemption is *ex gratia.*

It cannot be presumed that the legislature intended to leave the terms of the redemption by minors to be fixed in each case by the discretionary powers of the chancery court. A certain assurance was necessary to be given to purchasers at tax sales, and a uniform basis for all redemptions was indispensable.

The very provision that requires the payment of the taxes requires the payment of the interest. If there is no statutory requirement for the payment of interest, then there is none for the repayment of the taxes.

The argument *ab inconvenientia* has no place in the discussion of the question. And the plea of hardship has no weight or merit whatever.

One of the most distinguished of the English jurists, Coleridge, J., declared that "the court will not attempt to mold the language of an act for the sake of an apparent inconvenience, without the clearest evidence of a corresponding intention in the legislature." Potter's Dwarris on Statutes, 202.

In any possible view of the case the defendant is entitled to six per centum interest on the money paid for taxes.

Taxes, as such, may not carry interest, but this is not a case of the collection of taxes. The defendants have a claim for money expended for taxes for the benefit of complainant's property. And upon a claim to redeem the title, the complainant is under an implied assumpsit and obligation to refund the money thus expended. And upon this the legal rate of interest is chargeable, in the absence of any statute.

It is simply money expended for the complainant's benefit.

The defendants are not volunteers in paying the taxes. If so, there would be no valid claim for the principal of the debt, but all the payments were made in the protection of their title.

Whenever money is paid by a person for taxes under circumstances that entitle him to recover the principal, he is entitled to legal interest. According to the general doctrine of law, where a person pays taxes in good faith, supposing himself to be the owner of land belonging to another, the law raises, by implication against the latter, an obligation to reimburse the person making such payments. And this carries interest. *Goodman* v. *Litchfield*, 63 Iowa, 275–283; *Goodnow* v. *Plumbe*, 64 Iowa, 672.

The defendants are entitled to interest on the amount ex-

pended in permanent improvements before the commencement of this suit.    *Childs* v. *Showers*, 18 Iowa, 261; code of 1857, § 39, p. 80; code of 1871, § 1701; code of 1880, § 531; code of 1892, § 3823.

The complainant is not entitled to the enhanced rental value on improvements for which no compensation was allowed to the defendants.    It is not claimed that the defendants are entitled to compensation for improvements made after the filing of the bill, but it is clear that in denying this compensation and giving the improvements to the complainant, without compensation, it is unjust to charge the defendant with the rental value as enhanced by those improvements.    This is contrary to the doctrine uniformly held by the courts on this subject. *Tatum* v. *McLellan*, 56 Miss., 352; *Miller* v. *Ingram*, 56 Miss., 510; *Nixon* v. *Porter*, 38 Miss., 401; *Phillips* v. *Chamberlain*, 61 Miss., 740; Sedgwick & Tate on Trial of Titles to Land, sec., 678, p. 505; *Jackson* v. *Loomis*, 4 Cow., 68–172.

*Dabney & McCabe*, for appellee.

Of course the leading and vital question in this case, and the one on which appellants' counsel will most earnestly address himself, is as to whether or not the complainant is required to pay the fifty per centum per annum, as provided for by sec. 7, acts of 1858, p. 37.    To enforce the fifty per centum provision of sec. 7 referred to, would be, in effect, a confiscation of the minor's property and a denial to him of the redemption which sec. 6 guaranteed to him.

It is provided in sec. 6 that the sale shall convey a perfect title to the purchaser, who shall receive a deed, which deed shall remain on file in the clerk's office for the period of two years from the date of sale, "unless the same shall be redeemed as hereinafter provided [meaning as provided in sec. 7], saving the rights of all minors and persons *non compos mentis*, who shall have three years to redeem after they become of age, or become of sound mind under the provisions of this act."

Because of the peculiar connection between the provision for redemption by minors with what precedes it, it is apparent that the provision was inserted by way of amendment to the section. The connection is awkward, and the section does not appear to have been written as a whole.

By sec. 7 it is again provided that the sheriff's deed shall remain with the clerk, but "should the owner or owners of said lands, their agents or attorneys, apply, they or either of them shall be entitled to the redemption of said lands at any time within two years of the date of sale, upon the payment of the purchase money, with all subsequent taxes due thereon and fifty per centum per annum interest upon the whole amount." This fifty per centum is a very heavy penalty, and we submit that it could not have been intended that such a penalty should be applied except in the cases stated. The language is that the fifty per centum shall be collected of the owners who apply within two years, manifestly intending that it shall apply only to those persons who are required by law to redeem within that time.

It is further provided in the act of 1858 that should the land not be redeemed within the two years, the deed is to be made a record in the proper county, vesting permanently, "without further right of redemption," the title in the purchaser. This section, taken as a whole, shows conclusively that the provision was intended to apply only to other persons than minors and persons *non compos mentis*. And we submit that if there is a reasonable doubt as to the proper construction or application of this statute, this doubt should be resolved in favor of the minor because to apply the fifty per centum feature would be to deny to him the right of redemption at all.

The purchaser of the minor's property at tax sale becomes entitled to the possession of it at once after the two years from sale, as held in *Price* v. *Ferguson*, 66 Miss., 466. If it is property which brings revenue, he is entitled to such revenue. He has the privilege, we presume, of putting the property into condition to make it useful, as by clearing or otherwise im-

proving it.    If he is entitled to possession, as we think he is, he is not liable for rents or for use and occupation, and hence it appears that he is fully compensated for the use of his money without any provision for interest or damages in the right to have and occupy the property until it shall be redeemed.    In other words, the use of the property stands as compensation for the outlay of money, and surely this is ample provision for the few dollars ordinarily required to purchase property at tax sale. Hence, we say that there was no occasion to make provision in this act for the terms of redemption in respect to minor's property.    What was the law when the decision was rendered in the case of *Price* v. *Ferguson*, was the law in 1870, when this land was first sold for taxes, and was the law in 1858, when the act was passed under which the land was sold, and the purchasers at those tax sales bought with a presumed knowledge of that law.

It would be inequitable and unjust to hold a minor to the fifty per centum feature of this law.    It would appear to be a mere mockery to say to a minor by a solemn judicial decree of a court of equity: "Your land was sold for taxes when you were an infant.    The law reserves to you the right to redeem on attaining your majority, but you must pay fifty per centum per annum on all taxes for which the land was sold, and all subsequently accruing until redemption."    It would be equivalent to saying, "We give you the right to redeem, but you must pay a good deal more than the land is worth, to do so."

No provision whatever is made in this act as to the terms of redemption by minors.    The omission is explained by the fact that the purchaser is entitled to the possession of the property until redemption, or tender of redemption, which is full compensation to him for the use of his money.    Of course the court will not entertain the idea of allowing anything for improvements put on the land after the suit was brought; that would be worse than allowing interest on taxes after the suit was brought.    And in no case that we have ever seen, and in

accordance with no just principles of law that we have ever heard, would a court allow a defendant in possession of a complainant's land anything for improvements put on the land after a suit has been brought.

CALHOON, J., delivered the opinion of the court.

The questions here are, first, the proper construction of a legislative act as to the interest to be paid by a minor redeeming land from a tax sale, and, second, the proper adjustment of contentions as to rents and improvements on the lands redeemed.

Only two sections of the legislative act bear on the first question. The act is that approved December 2, 1858 (laws of 1858, special session, p. 33), entitled, "An act to aid in repairing and perfecting the levee of the Mississippi river in the counties of DeSoto, Tunica, Coahoma, Bolivar, Washington and Issaquena."

The two sections bearing on this record are these:

"Sec. 6. *Be it further enacted,* That the tax hereinbefore levied or assessed shall be a lien on the lands within said district, and should any owner or owners of any lands, or any person interested in the same, fail to pay the taxes hereinbefore levied and assessed at or before the time when the same may become due, it shall be the duty of the sheriff of the county in which said delinquent land may be situated, without further notice, on the second Monday in April in each and every year after the said tax may become due, to sell, at the courthouse door of his proper county, the land in default, or so much thereof as may be sufficient to pay the tax required and all costs of conveyance to the purchaser, to the highest bidder for cash, and, when sold, to execute a deed therefor to the purchaser, which deed shall vest in said purchaser a full and complete title in fee simple to the land so sold, and said deed shall be taken and received in any court of justice as vesting a perfect title in the purchaser, and shall be evidence that

the title of the owner or owners, as well as the claim of all persons interested therein, is thenceforward vested in the purchaser, and shall be *prima facie* evidence that the land was subject to the tax for the nonpayment of which the same was sold, and that all the prerequisites of said sale had been complied with. The said sheriff may continue said sale from day to day until the whole of said land liable to sale shall be disposed of, and if no person or persons shall bid the amount of tax due on any tract of land when offered for sale as aforesaid, such tract of land shall be struck off to the levee treasurer of the general board of commissioners, who shall be entitled to receive a deed therefor, executed to himself and his successors in office, which deed shall remain on file with the probate clerk of the county in which the land lies for the period of two years from the day of sale, unless the same shall be redeemed as is hereinafter provided, saving the rights of all minors and persons *non compos mentis*, who shall have three years to redeem after they come of age or become of sane mind, under the provisions of this act.

"SEC. 7. *Be it further enacted*, That the levee treasurer of the general board of commissioners shall have power to sell any land struck off to him at private sale, provided he shall be able to obtain therefor the amount of the purchase money with all accruing taxes and costs, with ten per centum per annum upon the whole amount from the date of purchase. The sheriff's deed, however, for all lands sold for taxes shall be and remain with the probate clerk, and should the owner or owners of said lands, their agents or attorneys, apply, they or either of them shall be entitled to the redemption of said land at any time within two years of the day of sale, upon the payment of the purchase money with all subsequent taxes due thereon, and fifty per centum per annum interest upon the whole amount. This redemption may be made from the levee treasurer himself whose receipt shall entitle the person redeeming to have canceled the sheriff's deed, or the redemption may be made from the probate

clerk of the county in which the lands lie and where the sheriff's deed is kept, the said probate clerk being required to receive said money and pay the same over to the order of the levee treasurer of the general board, or to the person entitled to receive the same; and in default of this, said probate clerk shall be liable on his bond at the suit of the board of levee commissioners or the party injured in the same penalty as prescribed for the nonpayment of state taxes, and should lands not be redeemed or sold as herein provided for the period of two years from the day of purchase, the sheriff's deed shall be made a record in the proper county, vesting permanently without further right of redemption. The title in the levee treasurer of the general board of commissioners and his successors in office, or the person or persons who may have purchased the same, or the person to whom he may have transferred the same by private sale, all lands described in said deed, and when said vesture shall accrue to said levee treasurer, the land shall become the property of the general levee fund or other purchaser, and may be disposed of by the board of levee commissioners as they may by ordinance provide; provided, however, that all money paid or received for the redemption of lands purchased by the levee treasurer within the first three years in the counties of Tunica, Coahoma, Bolivar, Washington and Issaquena, shall accrue to said counties respectively, and be paid by the levee treasurer to the person authorized to receive the same. The sheriff, for making the deeds and delivering the same to the probate clerk, shall be entitled to receive from the levee treasurer the sum of one dollar for each deed, which sum shall be added and taxed in the costs, and the probate clerk, for receiving the money in redemption and paying the same over to the levee treasurer, shall be entitled to five per centum upon the total amount to be paid by the levee treasurer; and no sheriff's deed shall be objected to for want of form, and when said deed shall embrace the lands of different claimants, the same shall not be surrendered to either, but the probate clerk shall mark,

in case of redemption of any portion of said lands, the fact showing the part redeemed, and when said deed is recorded, the record shall show the fact that a portion has been redeemed and that the title to the same has reverted to the principal owner or owners."

Appellee claims by tax title under purchase from the state in 1869, while appellants claim also by tax title through a sale by the proper tax collector of Sunflower county, in 1871, to the Liquidating Levee Board. The precise point of contention is whether or not the minor, in order to redeem, must pay fifty per centum per annum interest on the tax sale price and on all subsequent taxes up to the date of redemption. One side claims that he must, and the other side that he need not pay any of that interest at all. The one says that the law is so written that it is not subject to construction, that it is too plain in its language for any interpretation beyond its letter and clear, literal meaning, and reinforces this position by the legislative purpose to encourage purchases in order to build the levees. The other says that the fifty per centum clause does not apply to minors, or persons *non compotes mentis*, by any fair construction, and reinforces by the argument that such an interest, in a long series of years would, in nearly every instance, enormously exceed the value of the property.

We do not concur with either side. The statute must be construed, if it can be, and we think it can, so as not to work a gross hardship on either party, and yet conform to the policy indicated in the act. That policy was to discourage forfeitures of lands for taxes, and to encourage the purchase of forfeited lands so as to get money to build levees.

In reference to sane adults the legislature thought its object would be accomplished by requiring redemption within two years of the date of sale, on payment of the purchase money and all taxes to the date of redemption and interest on the sum total for the two years, at the rate of fifty per centum per annum, and we think nonsane persons and minors may redeem on

the same terms within three years after the passing of the disability. If, however, such do not redeem within the two years, as they might, of course they must superadd to the total required at the end of that time, the interest on it at the legal six per centum rate up to the time that they do redeem, and like legal six per centum interest on each subsequent tax payment by the purchaser. This we think the meaning of the words in section 6, " who shall have three years to redeem after they become of age, or become of sane mind, under the provisions of this act," construed with the provisions referred to in section 7. We now proceed to announce what we think to be the proper basis for accounting on the facts of this particular case, and we announce it in view of the cases of *Tatum* v. *McLellan*, 56 Miss., 352; *Miller* v. *Ingram*, 56 Miss., 510; *Nixon* v. *Porter*, 38 Miss., 401; *Phillips* v. *Chamberlain*, 61 Miss., 740; *Gaston* v. *King*, 63 Miss., 326; *French* v. *McAndrews*, 61 Miss., 187; *Stewart* v. *Matheny*, 66 Miss., 21; *Hughes* v. *Stallings*, 52 Miss., 375; *Staton* v. *Bryant*, 55 Miss., 261; *Robinson* v. *Jones*, 68 Miss., 794; *Hudson* v. *Strickland*, 58 Miss., 186; *Uhler* v. *Adams*, 73 Miss., 332; *Sivley* v. *Summers*, 57 Miss., 712.

We do not delay to separately discuss these cases, as they may be examined at leisure by those interested in the subject.

The original bill in the record before us was filed December 8, 1890, and has two aspects, in that it seeks, first, to have appellants' tax title declared absolutely void; and, second, if that contention did not prevail, to be allowed to redeem. The litigation dragged along for several years, when this court, in 72 Miss., 89, on November 26, 1894, held the tax title of appellants valid, subject only to the right of appellee to redeem. Meantime, the appellants, who had improved the property, before suit brought, so as to bring it from a condition with no rental value to a condition yielding $150 yearly rents, put on it, after suit brought, other valuable improvements, so that it

yielded an annual rental of $450, and they continued to pay the taxes.

In this situation of affairs appellants, in possession, believing their title valid, as it was afterwards held to be, but, as held by the court, defeasible by a redemption, which might. or might not be made, had the option to leave the land a wilderness, and of no benefit to them or appellees or the commonwealth, or to give it rental value by improvement. Of course they were entitled to the value of their improvements *ante litem motam*, and, of course, they cannot claim anything of the cost of the improvements they put on the land *post litem motam.*

But the appellee, who did not risk paying any taxes before or after suit, while claiming the benefit of the law giving him all the improvements put on since the suit, demands the full rent, $450 per annum, the entire enhancement from $150 caused by their erection. We are constrained to approve this on the authorities. We think the adjustment of all matters of accounting between the parties, before and since the suit was brought, should be as follows: The original tax purchase price, from the date fixed in the decree below, and the taxes for two years from the purchase, and fifty per centum per annum on the whole, shall become the principal, on which shall be calculated six per centum per annum interest, to which shall be added annual tax payments, with like interest, separately calculated from their payment to the time when improvements were made, and their cost, without interest, shall be then added to such total whenever a credit for rentals arises, and the rentals received are to be credited only when they equal or exceed the interest on the debt, and thus a new principal shall arise, and so on for all the time before and during the suit, but no allowance shall be made for the cost of improvements made after suit brought, but credits for rentals thereafter shall be of such rentals as enhanced by such improvements made after suit brought, and the finding of the chancellor of rental values before suit, and of the cost of improvements, and what the im-

provements were shall stand as shown in his final decree, which shall be modified otherwise to conform to this opinion and an account to be taken on the basis herein announced, and the appellee is to be taxed with the cost of this appeal.

*Reversed and remanded.*