## J. A. COLE ET AL. *v.* B. F. JOHNSON.

1. APPEARANCE. *Bill in chancery. Defective proof of publication. Cured by demurrer.*

    The informality of proof of publication to non-residents on a bill in chancery is cured by a demurrer to the bill, filed in behalf of "the defendants." It must be taken to mean all the defendants.

2. CHANCERY. *Practice. Pro confesso. Failure to enter order. Recital in order of reference.*

    The record showed no formal order *pro confesso;* but in the order of reference was this recital: "It appearing to the satisfaction of the court that judgment *pro confesso* has been duly and properly taken against the adult defendants in this cause." *Held,* sufficient to uphold the final decree against said defendants.

3. SAME. *Reference to commissioner. Objections to report. Must be made in court below.*

    Where an account is stated by a commissioner upon proof taken after notice given to the parties, which proof is returned with his report, this court cannot pass upon the correctness of his findings, no exceptions having been filed to the report, and no error in law having been committed.

4. SAME. *Guardian ad litem may be commissioner to state account.*

    It is bad practice, but not error, to appoint the same person guardian *ad litem* of infants, and commissioner to state an account against them.

5. CHANCERY. *Jurisdiction. Bill to enjoin ejectment for land purchased at voidable probate sale.*

    Equity has jurisdiction of a bill by a purchaser at a voidable probate sale, to enjoin an ejectment suit by the heirs of the intestate to recover the land, so far as to compel them to refund the purchase-money, which is shown to have been applied in exoneration of the liabilities of the estate before they are let into possession of the land.

6. ACT FEB. 11, 1873. *Voidable probate sales. Construction of the term "good faith."*

    The act of Feb. 11, 1873 (Acts 1873, 41), for the relief of purchasers of real estate at probate or chancery sales, when it states the purchase-money must have been *in good faith* paid by the purchaser, and *in good faith* applied to the payment of debts or distributed among the distributees, means, by the requirement of good faith, that it shall have been genuinely paid, without any knowledge or suspicion of fraud either on the part of the purchaser or of the administrator. The term is used in contradistinction to bad faith, and not in the technical sense in which it is applied to conveyances of title, in which latter sense a party wholly free from moral *mala fides* is still frequently held not to be a *bona fide* purchaser.

7. EJECTMENT. *Valuable improvements. Code,* § 1557, *construed. Good faith. Learned* v. *Corley overruled in part.*

Under § 1557, Code 1871, which provides that no defendant in eject-
ment shall be entitled to compensation for improvements, unless he
shall claim the premises under some deed or contract of purchase,
made or acquired in good faith, the fact that a fatal defect in his title
is discoverable by an examination of the records of the county is not
enough to deprive him of the right to the value of his improvements
in the ejectment suit; and from so much of the opinion in *Learned*
v. *Corley*, 43 Miss. 687, as holds the contrary, this court dissents.

8. SAME. *Who entitled to claim for improvements.*

The *bona fide* possessor of land who is entitled to claim for his improve-
ments is one who not only supposes himself to be the true proprietor,
but who is ignorant that his title is contested by some other person
claiming a better right. After such occupant has notice of such claim
he becomes a *mala fide* possessor. *Green* v. *Biddle*, 8 Wheat. 1.

9. SAME. *Defective judicial sale. Purchaser of the land not party to suit.*

In order to deprive the occupant of land, under color of title, of the
value of permanent improvements erected thereon, there must be
brought home to him either knowledge of an outstanding paramount
title, or some circumstance from which the court or jury may fairly
infer that he had cause to suspect the invalidity of his own; but this
cannot be inferred merely because it could have been demonstrated
by the records of the county, showing defects in a judicial sale, where
the land has been bought by a person disconnected with the proceed-
ings, with no actual notice or suspicion of the irregularities con-
tained in them.

APPEAL from the Chancery Court of Union County.

Hon. C. CULLENS, Chancellor.

This was a bill filed by B. F. Johnson to enjoin the defend-
ants, heirs-at-law of John Cole, who died owning the lands
in controversy, from further prosecuting an ejectment suit
against said Johnson, to recover said lands, which Johnson
had purchased and paid for at a void probate sale, the pur-
chase-money having been applied to pay off the debts of the
decedent by the administrator in good faith, and said Johnson
having put valuable improvements on the lands.

The prayer was for an account of the rents and profits on
the one hand, and the improvements and purchase-money on
the other, that they be set off against each other, and the
balance, if any, due the complainant charged on the lands.

A demurrer to the bill was overruled, and the defendants

declining to answer, there was a reference, statement of the account, and a final decree, from which the case comes to this court by appeal.

The facts on which the various questions decided are raised are stated in the opinion of the court.

*Clayton* and *Clayton*, for the appellants.

1. The demurrer of the defendants to the bill should have been sustained; because the remedy of the complainant was complete at law, by setting up, as a defence to the action of ejectment, the same matter which is alleged to sustain the bill. Code 1871, § 1557; Acts 1873, 41.

2. The purchase at the void probate sale was not one in good faith, and hence the complainant is not entitled to improvements. *Learned* v. *Corley*, 43 Miss. 688.

3. The fact that the estate is insolvent does not divest the heirs of their title to the land. They have still the right to attack a void sale of it.

4. It was error to appoint the guardian *ad litem* of the minors to take the account.

*Potter* and *Green*, for the appellee.

1. It is well settled that in equity a purchaser in good faith at a void judicial sale, when the purchase-money is paid and properly administered, is entitled to have the property subjected to the payment of the purchase-money, and improvements made thereon. *Short* v. *Porter*, 44 Miss. 533; *Woods* v. *Ridley*, 27 Miss. 114; *Wilie* v. *Brooks*, 45 Miss. 542. " Good faith," in equity, means that the purchaser must think or " suppose " he is owner. 1 Story Eq. Jur. § 388. Diligence to ascertain the state of the title is not required if he acts on an honest belief or supposition.

2. As the estate is insolvent, the heirs or distributees cannot complain of the decree, because the estate is virtually administered as to them. *Bird* v. *Furniss*, 33 Miss. 44.

3. The appellee's rights do not rest on the act of 1873, 41, but are founded in equity; and, although like powers may be in some cases vested in courts of law by statute, the ancient jurisdiction of equity is unimpaired. George Dig. 876. However, the act of 1873 does not seem to give a remedy at law, but leaves the lien thereby recognized to be enforced in equity.

4. It is common practice to appoint the clerk of the court guardian *ad litem*, and commissioner to state the account. If it was error, it is not to the appellants' prejudiee, for it must be to their advantage to have their guardian state the account. The appellee is the only party who could complain of this order.

CHALMERS, J., delivered the opinion of the court.

The appellee filed his bill to enjoin the prosecution of an action of ejectment which had been instituted by the heirs of John Cole, deceased, to recover from him certain lands which had been by him purchased at a sale made by the administrator of said John Cole, under decree of the Probate Court of Tippah County. The prayer of the bill was that the heirs of said Cole might be restrained from ejecting the complainant from the lands, until they should have repaid to him the purchase-money by him paid to the administrator, with interest, and the value of all permanent and useful improvements put by him on the land, or the balance remaining due thereon after deduction of the rental value of the land during the time the complainant had been in possession. A decree was rendered in accordance with the prayer, upon the report of a commissioner, showing that there was due the complainant $2,869.50; he being credited with the purchase-money with interest, and with his valuable improvements, and debited with the rents. The heirs appealed.

It is objected that the proof of publication as to non-residents was not in due form. This is cured by the demurrer filed in behalf of " the defendants," which must be taken to mean all the defendants. *Schirling* v. *Scites*, 41 Miss. 644. After the overruling of the demurrer, the defendants were allowed sixty days in which to answer; but, failing to do so, final decree was rendered, as it is said, without the entry of a *pro confesso*, and this is assigned for error.

The record shows no formal order *pro confesso ;* but in the order of reference there is this recital: " It appearing to the satisfaction of the court that all the parties in interest have been duly served with process, and that judgment *pro confesso* has been duly and properly taken against the adult defendants in this cause," &c.

This sufficiently shows that, in fact, an order *pro confesso* had been taken, and warrants the belief that the failure to enter it was a clerical misprision. It has been several times held that a failure to enter a judgment by default would not vitiate a judgment at law where there had been a jury and verdict without issue joined. *Rappleye* v. *Hill*, 4 How. (Miss.) 295, 302; *Garrett* v. *Felt*, 32 Miss. 137; *Hewett* v. *Cobb*, 40 Miss. 61.

But it is objected that there were minor resident defendants, and that the decree was taken without proof. This is a mistake. The transcript of the administration proceedings from the Probate Court of Tippah County showed every thing. requisite to be shown in relation to the purchase of the land and the payment of the purchase-money, as well as the legal irregularities which vitiated the sale and invalidated the title.

The account as to rents, taxes, and improvements was stated by the commissioner upon proof taken after notice given to the parties, which proof was returned with his report. We cannot pass upon the correctness of his findings, no error of law having been committed, because no exceptions were filed to the report.

It is said that the court erred in appointing the same person guardian *ad litem* of the minors, and commissioner to state the account against them. It would seem that they ought not to complain that their guardian took the account; and we know of no principle or precedent which would warrant a reversal on this account. Inasmuch, however, as in such cases it might become the duty of the guardian to except to the account, we think it bad practice to appoint the same person to both positions. We are aware that it is quite commonly done in practice, the clerk of the court, as in this case, being usually assigned to both offices.

The bill is supposed to have been filed under the provisions of the act of Feb. 11, 1873, whereby it is declared that the purchaser of lands at a sale made under a void or voidable decree of the Probate Court, when sued in ejectment by the heirs, shall have a lien on the lands for the repayment of his purchase-money.

The demurrer raises the question whether this right can, under the statute, be asserted in the ejectment suit, and whether

there is, therefore, any excuse for coming into chancery. We do not so understand the statute. It only declares that the heir " shall hold the real estate subject to the payment of the purchase-money," without indicating any method by which the purchaser's right to repayment is to be enforced. Certainly, the most appropriate, if not the only adequate, method of securing it would be by a chancery proceeding. Independently of this statute, however, a court of equity has the right to charge the purchase-money on the land, where it is shown to have been applied in exoneration of the liabilities of the estate, as was decided, before the enactment of the statute, in *Short* v. *Porter*, 44 Miss. 533 ; and it is well settled that the bestowal of jurisdiction on a common-law court does not divest the jurisdiction of a court of equity, unless it is expressly so enacted.

The claim for repayment of the purchase-money, as well as for the value of the improvements, is resisted, upon the ground that the first is only recoverable where it has been " in good faith paid by the purchaser; " and the second, where the person making the improvements " shall claim the premises under some deed or contract of purchase made or acquired in good faith." Acts of 1873, 41 ; Code of 1871, § 1557.

It is insisted that, inasmuch as the defects in the Probate Court proceedings under which the complainant purchased were patent upon the record, and could have been ascertained by inspection, the complainant cannot claim to have become a purchaser, or to have paid his money in good faith.

So far as the payment of the money is concerned, it seems quite manifest that all that is meant by the requirement of good faith is, that it shall have been genuinely paid, without any knowledge or suspicion of fraud either on the part of the purchaser or of the administrator. The term is used in contradistinction to bad faith, and not in the technical sense in which it is applied to conveyances of title, in which latter sense a party wholly free from moral *mala fides* is still frequently held not to be a *bona fide* purchaser.

Does the requirement that an occupant of real estate, demanding compensation for valuable improvements erected

thereon, shall " claim the premises under some deed or contract of purchase, made or acquired in good faith," import that such claim cannot be maintained, if the purchaser could by any possible research have discovered the invalidity of his title? It was so stated in *Learned* v. *Corley*, 43 Miss. 687, where it was held that the defendant in ejectment could not obtain compensation for his improvements, because an examination of the records of the county would have disclosed to him that, many years before his purchase, the Probate Court had failed to confirm a commissioners' sale, upon which rested one of the links in his chain of title. Upon the familiar principle that a party is bound to take notice of all the recitals and imperfections contained in his chain of title, and, as against rights springing out of such recitals and imperfections, cannot be said to be a *bona fide* purchaser without notice, it was declared that the defendant was not entitled to his improvements.

It is to be remarked that the doctrine thus enunciated was manifestly an *obiter dictum* in the case referred to. The court had already declared that the claim for improvements could not be maintained, because there had been no demand of mesne profits by the plaintiff; and this view was decisive of the case. All that was subsequently said, therefore, is entitled only to such persuasive force as its own intrinsic merits demand ; and, after mature reflection, we must announce our dissent from so much of the opinion as holds that the value of permanent improvements is not recoverable, where the defect in the title is discoverable by an examination of the records of the county.

The requirement that the party making the improvements " shall claim the premises under some deed or contract of purchase made or acquired in good faith," must mean nothing more than an honest belief on his part that he is the true owner. The expression, " some deed or contract of purchase," of itself negatives the idea that it is the true title which he must have, and plainly indicates that what the law recognizes as " color of title " will be sufficient. Indeed, if he were the purchaser of the true title, there would be no occasion for him to invoke the protection of the statute, since he could never

be dispossessed, and hence would never be compelled to make claims for improvements. But does not the rule that he shall be denied them, if by an investigation he could have discovered the defect in the title, practically abrogate the statute ?

There are very few defects of title which an investigation of the records, sufficiently prolonged and accurate, will not disclose ; and what limit shall be put upon the duty of search ? Can we say that he shall be bound by defects that are apparent, and not by those that are intricate and doubtful ? How, then, shall we determine what description of defects such a classification will embrace ?

In this very case of *Learned* v. *Corley*, *ubi supra*, the defect consisted in the fact that a Probate Court sale which had taken place many years before had not been reported to and confirmed at the next succeeding term of the court after it was made, but the land in the mean time had passed through several successive vendees to the defendant. Having failed to discover and appreciate this defect, he was declared incapable of claiming the benefit of the statute. The hardship of the rule is well illustrated, when we consider that it was by a previous decision in this very case that the announcement had been distinctly made for the first time in this state, that it was essential in Probate Court sales that the confirmation should be had at the next succeeding term (*Learned* v. *Matthews*, 40 Miss. 210) ; and we believe that we are not mistaken in saying that the impression among many members of the profession had previously been otherwise. To hold under such circumstances that the person erecting permanent and valuable improvements should be denied the benefit of them is little short of saying that he can never obtain them, where there is an outstanding paramount title ; and this is to nullify the statute.

In the celebrated case of *Green* v. *Biddle*, 8 Wheat. 1, in which the so-called " Occupant Laws " of Kentucky were held by the Supreme Court of the United States to be unconstitutional, Judge Washington speaks of the *bona fide* possessor of land who is entitled to claim for his improvements as being one " who not only supposes himself to be the

true proprietor of the lands, but who is ignorant that his title is contested by some other person claiming a better right to it; " and he declares that, after such occupant has notice of such claim, he becomes " a *mala fide* possessor." This is, we think, a correct enunciation of the true rule on the subject.

The exact question under discussion is decided in accordance with the views here announced in the cases of *Dothage* v. *Stuart*, 35 Mo. 251 ; *Morrison* v. *Robinson*, 31 Penn. St. 456 ; *Whitney* v. *Richardson*, 31 Vt. 300 ; though the language of the statutes involved was not altogether like our own. Our view is, that, in order to deprive the occupant of land under color of title of the value of the permanent improvements erected thereon, there must be brought home to him either knowledge of an outstanding paramount title, or some circumstance from which the court or jury may fairly infer that he had cause to suspect the invalidity of his own title, but that this cannot be inferred merely because it could have been demonstrated by the records of the county.

There is in law a degree of negligence known as " *crassa negligentia*," which is said to be akin to fraud, and to carry with it many of its consequences. Where the purchase is made under circumstances which would warrant the imputation of such negligence to the purchaser, as if, for instance, a deed was received, without inquiry, from a mere stranger to the land, who had neither possession thereof nor any actual or apparent claim thereon, the claim of being a *bona fide* purchaser might well be rejected. But we do not think that such imputation can ever be predicated of a judicial sale because of defects in the record, where the land has been bought by a person disconnected with the proceedings, and with no actual notice or suspicion of the irregularities contained in them. Whether a different rule would prevail where the land was bought by a party to the suit, it is not necessary now to decide.        *Decree affirmed.*