FRANCES HICKS *v.* MOLLIE BLAKEMAN ET AL.

| 74 | 459 |
| d77 | 55 |
| 74 | 459 |
| f94 | 681 |

1. CHANCERY COURT. *Guardian's sale of land. Rights of purchaser. Notice.*

One who claims under a guardian's sale, that was neither reported to nor confirmed by the court, nor made in compliance with the decree ordering it, is affected with notice of the infirmity in his title, and cannot claim the land as a *bona fide* purchaser for value, there being no evidence of payment of the purchase money save a somewhat vague recital in the guardian's void conveyance of a payment of one-half thereof at the time of sale.

2. SAME. *Improvements.*

One who, claiming under a guardian's sale that is void for want of confirmation and noncompliance with the decree ordering it, enters upon the land under the guardian's deed, and, in the honest belief that his title is good, makes permanent improvements thereon, is entitled to a decree for such improvements on the establishment of an adverse title. *Cole* v. *Johnson*, 53 Miss., 94, cited.

3. SAME.  *Measure of recovery.*

> The amount that the market value of the land is enhanced by the improvements made thereon, in good faith, by one claiming under the void conveyance of a guardian, is the proper measure of his recovery on account thereof.  *Nixon* v. *Porter*, 38 Miss., 401; *Willie* v. *Brooks*, 48 *Ib.*, 542; *Clark* v. *Hornthall*, 47 *Ib.*, 434; *Massey* v. *Womble*, 69 *Ib.*, 347, cited.

FROM the chancery court of Yazoo county.

HON. H. C. CONN, Chancellor.

On October 2, 1877, complainant was the owner of the land in controversy by descent from her grandfather, the deraignment of title set up in the bill being agreed to be correct.    On that day her guardian, W. S. Epperson, petitioned the chancery court for leave to sell the land, the grounds of the petition being that the land was unproductive, and that her remaining estate was insufficient for the payment of her debts and for her support.

These allegations of the petition were attacked in this case as untrue.    Complainant's mother and her uncles, James and Henry Vaughan, were made parties to the petition for sale, and citation was issued for them on the same day of the filing of the petition, and returned executed on the same day.    The citation required the appearance of the parties at the October term, 1877.    At that time no action was taken on the petition, which was remanded to the rules, for some reason unexplained by the record.    At the April term, 1878, a guardian *ad litem* was appointed for complainant, who made formal answer for her.    At the same term decrees *pro confesso* were taken against the next of kin, and, finally, on March 25, 1879, a decree for sale was rendered, without additional process for next of kin.    By the decree the land was ordered to be sold for one-half cash, balance on credit, and, on April 26, 1879, the guardian sold the land, J. W. Ricketts becoming the purchaser of a lot in the town of Vaughan's Station for $150, and N. Birmingham purchasing the remainder for $1,253.75, and on the same date the

guardian executed deeds to the purchasers, the deeds reciting
that the decree required the sale to be for one-half cash, and
the balance payable on November 1, next following; that the
grantees were the highest bidders at the sums mentioned, and
that the lands were struck off to them in consideration of said
respective sums "paid and secured to be paid." The sale was
never confirmed and never reported by the guardian, who
wasted or misappropriated the half of the purchase money re-
ceived by him. The guardian never filed any accounts with
his ward, and on April 10, 1882, he was removed by the court.
In 1877, when the land was sold, the complainant was only
three years old. Ricketts sold the land bought by him at the
guardian's sale to his wife, she conveyed it to Sharp, Tucker
& Co., and it is now claimed by and is in the possession of one
J. S. Tucker, one of the defendants, who bought from the sur-
viving partner of Richardson & May, who acquired title in
some way undisclosed by the record.

Birmingham, the other purchaser at the guardian's sale, hav-
ing died in 1882, his estate was declared insolvent, and his real
estate ordered sold. At the sale by the executor, on March 10,
1884, J. L. Blakeman, Birmingham's son-in-law, and husband
of defendant, Mollie Blakeman, bought twenty acres of the
land in controversy, which Blakeman afterwards conveyed to
Mrs. Ida Tucker. Twenty-four acres of the land were also
bought by A. J. Collins at the executor's sale, and these he
afterwards conveyed to J. L. Blakeman, and he to defendants.
The remaining portions of the lands were inherited by defend-
ants, Mollie Blakeman, Ada Croom, and Norma and Wanda
Tucker, from Birmingham—John Birmingham, another heir,
having conveyed his interest to them on July 2, 1884. On
March 26, 1890, several heirs of N. Birmingham partitioned the
land among themselves, and since then have held the same in
severalty, as shown by complainant's bill. J. S. Tucker was
in possession of and claimed the purchase by Ricketts at the
guardian's sale under mesne conveyance from him, and the re-

maining portions of the land sold by the guardian were in pos-
session of and claimed by the other defendants—sixty acres by
inheritance from Birmingham, and forty-four acres by purchase
from the purchasers at the sale by the executor of Birmingham's
estate.    The sale by the executor occurred nearly two years
after the removal of Epperson as complainant's guardian.

On May 24, 1894, complainant filed her bill in the chancery
court of Yazoo county, setting up the foregoing facts, alleging
that the sale by the guardian was void; that she was the true
owner of the land in controversy, and praying that the defend-
ant's title be canceled, and that she be adjudged the real
owner, for possession, for rents and profits, and for general
relief.    The defendants answered, setting up that Ricketts and
Birmingham purchased in good faith, and paid the purchase-
money at the sale by the guardian, and interposing the two
years statute of limitations relative to lands sold by order of
the chancery court.    There was no evidence that the purchase
money was paid apart from the recital in the guardian's deed
of a payment of half the purchase money, which deeds were
made before confirmation.

The answer further alleged that J. S. Tucker, as to the lot
held by him and defendants—as to that portion bought from
A. J. Collins—were purchasers in good faith and without no-
tice.    No evidence was offered in support of this defense, the
deeds which showed that the consideration for the several con-
veyances had been paid, showing, also, that those conveyances
were of the same imperfect title conveyed by the guardian.

Defendants further averred that though there had been no
confirmation of the guardian's sale by the court, complainants
had confirmed it *in pais*.    This allegation rests partly upon an
unsworn petition, filed by her mother as next friend during
complainant's minority, for the removal of Epperson as guard-
ian, in which it was alleged that Epperson had collected the
purchase money, and failed to account for it, and that he was
largely indebted to the complainant beyond the amount of the

purchase money; and partly upon the acts of defendants, it not being shown that complainant had knowledge thereof, or had ever received any part of the purchase money, in remaining in possession and improving the property.

Defendants also set up that complainant was indebted to Epperson, who was a lawyer, for legal services and taxes paid, and sought to be subrogated to his right therefor against complainant. The evidence offered in support of this averment was a charge in his fee book for $150 for services, it not being made to appear whether, even allowing this credit, Epperson would not still be indebted to complainant. As to the taxes said to have been paid by Epperson, the petition for removal shows that he had failed to pay them, and allowed complainant's land to be sold therefor. No evidence appears in the record of any taxes paid by Epperson.

Defendants also claimed the value of improvements made by them on the land and taxes paid by them thereon. The answer was made a cross bill, which was duly answered by complainant, denying its material allegations, and the cause went on regularly to hearing. Exceptions to defendant's answer were overruled, as was also a demurrer to the cross bill, but all the questions raised thereby arose also in the further progress of the cause.

On the hearing the chancellor decreed that the guardian's sale was void and conveyed no title, and that complainant was entitled to recover the land and rents and profits therefor, but that defendants were entitled to recover the value of improvements, and a reference was made to the clerk, as commissioner, to take and state an account of both, with leave to both parties to adduce further testimony before the commissioner.

The grounds of the attack on the title conveyed by the guardian were (1) want of confirmation; (2) want of jurisdiction, because of the failure to cause the next of kin to appear before the court when the petition of sale was finally acted upon, seventeen months after the term at which they had originally been

cited to appear; (3) because the reasons for the sale, as alleged in the petition therefor, were untrue in fact. The voluminous record consisted largely of testimony as to the value of the rent and profits and improvements. On the testimony, the commissioner reported the value of the former at $1,227. His report on improvements consisted of an estimate based on their cost, or the amount necessary to replace them, the estimate being $1,600.50, plus taxes and interest thereon, $282.90, total, $1,883.40; and of an estimate as to how much the value of the land had been increased by reason of the improvements, the amount of that estimate being $1,000. On complainant's exception to the report, the chancellor held that the amount recoverable for improvements was not the enhanced vendible value, but the amount necessary to replace them. The complainant appealed, and assigned as error (1) the action of the court in allowing any recovery for improvements, and (2) in allowing more than the value added to the estate by the improvements.

*Barnett & Thompson*, for the appellant.

In *Learned* v. *Corley*, 43 Miss., 687, it was held that a party is bound to take notice of all the defects appearing in his chain of title, and, as against rights springing out of such defects, cannot claim to be a *bona fide* purchaser without notice. Held, that the purchaser was not entitled to his improvements. The effect of this decree was to deny the sufficiency of actual good faith and honest ignorance of defects to support a claim for improvements where the title papers under which the purchaser claimed themselves disclosed the invalidity of his title. It declared that the good faith required by statute, in claiming improvements, was identical with that to establish a *bona fides* in acquiring title, and that neither could coexist with constructive notice of equities or superior rights, whatever might be the actual belief of the purchaser. The definition of Washburn, J., in *Green* v. *Biddle*, 8 Wheat., 1, of good faith in claiming improvements, by which the ignorant, but honest,

belief of the purchaser was made the test, without reference to constructive notice, was by *Learned* v. *Corley* impliedly disapproved, and, if this case is authority, defendants are plainly not entitled to recover for improvements.    But in *Cole* v. *Johnson*, 53 Miss., 94, *Learned* v. *Corley* was expressly overruled, and Judge Washington's definition was cited with approval, while *Cole* v. *Johnson* was itself approved in *Stewart* v. *Matheny*, 66 Miss., 21.

We have stated the decisions as strongly as possible for the appellees.    We shall, nevertheless, undertake to show that *Learned* v. *Corley* should still be treated as authority, and that the rule of that case is much more in accord with the latest utterances of this court (*Pass* v. *McLendon*, 62 Miss., 580; *Stewart* v. *Matheny*, *supra*) than are the opinion and dicta in *Cole* v. *Johnson*.

In the first place, it is impossible to read the opinion in *Cole* v. *Johnson* without seeing that the learned judge who delivered it was laboring under the mistake that the sale in question, in *Learned* v. *Corley*, had really been confirmed by the probate court.    We cite especially his language on page 101 to prove this statement.    It is probable that the mistake was due to the dictum contained in an earlier report of the same case (*Learned* v. *Matthews*, 40 Miss., 210), to the effect that the probate court had no power·to confirm after the next term succeeding a sale. That this decision was obiter, as there had been no confirmation of the sale referred to, was remarked by Campbell, J., in *Johnson* v. *Cooper*, 56 Miss., 608.    But whatever the reason of the error, it is certain that in *Learned* v. *Corley* there had been no confirmation, and that the court, in speaking of that case, in *Cole* v. *Johnson*, supposed that there had been.    If the fact of confirmation had been a distinguishing feature between the two cases, it is a fair inference that had the court, in *Cole* v. *Johnson*, known that the sale in *Learned* v. *Corley* lacked confirmation, the latter case would not have been overruled.

In the second place, the fact of confirmation constituted a

marked difference between the two cases. In *Cole* v. *Johnson*, the record of the proceedings under which the sale was made, presented a decree for sale by the proper court, a sale made in pursuance thereof. and a regular confirmation which vested title. The defects preceded the decree of confirmation. That decree, however, adjudicated the regularity of the antecedent proceedings, and the purchaser was justified in relying on such adjudication and failing to search behind it for defects determined by the decree not to exist. Such is the effect of a decree of confirmation. *Voorhees* v. *Bank*, 10 Pet., 449; 12 Am. & Eng. Enc. L., 219, notes 4 and 5. *Cole* v. *Johnson* being, therefore, a case in which the validity of the proceedings had been regularly adjudged by the court's ratification, the decision meant no more than that the purchaser was not responsible if the court had erred in such adjudication. The error consists in the want of such adjudication. It is no error of the court preceding the sale, but the omission of the purchaser or his vendee to obtain ratification after sale, as they might have done. *Redus* v. *Hayden*, 43 Miss., 614; *Jones* v. *Hooper*, 50 Miss., 510; *Gibson* v. *Marshall*, 64 Miss., 72.

Though a purchaser may be excused for reliance upon a judicial decree of confirmation, we submit that he may not omit to perfect his purchase, as he may do, and afterwards claim ignorance of the very defect occasioned by his omission. He was bound to know the law, which required confirmation to complete the sale (*Alsobrook* v. *Eggleston*, 69 Miss., 833); and those claiming under him stand in no better position, as we shall attempt to show. For the present, we wish merely to point out the distinction between *Learned* v. *Corley* and *Cole* v. *Johnson*, the fact that the distinction was overlooked in the latter case, and that the distinction made it necessary to overrule *Learned* v. *Corley*, which overruling becomes, therefore, mere dictum, which this court need not now follow.

In *Pass* v. *McLendon*, 62 Miss., 580, and *Stewart* v. *Matheny*, 66 Miss., 21, the court receded from the doctrine of *Cole* v.

*Johnson*, and returned to that of *Learned* v. *Corley*, in holding that, irrespective of the actual belief of the purchaser as to his title, he could not recover for improvements if the face of the title papers, under which he held, disclosed defects of title. In these cases the court once more applied the doctrine of constructive notice from apparent defects in title papers, to defeat the purchaser's claim for improvements, and held him bound to know everything appearing on the face of those papers. To that extent it is plain that *Cole* v. *Johnson* had been overruled and *Learned* v. *Corley* re-established, subject to an exception hereafter to be noticed. It is also to be noticed that the presumption of knowledge of defects appearing in the purchaser's chain of title, is not limited to the deed from his immediate vendor, but extends to every link in the chain.

In *Stewart* v. *Matheny* the purchaser obtained title through successive conveyances from a life tenant, which conveyances purported to convey a fee, and though actually ignorant of the estate of his remote vendor, which was all the title he had, his implied notice was held enough to bar his claim of improvements. If honest ignorance of defects alone were the test, the purchaser, in *Stewart* v. *Matheny*, should unquestionably have recovered his improvements; and it is plain that in denying such recovery, the court, of necessity, overruled the broad doctrine of *Cole* v. *Johnson*. Though that case was approved, the approval, under a familiar rule, was only the result reached on the facts, and not of every dictum contained in the opinion. We have already attempted to show that it was unnecessary to overrule *Learned* v. *Corley*, and, if this is true, it follows that the approval of *Cole* v. *Johnson* did not include the dictum overruling *Learned* v. *Corley*.

The single exception to the rule of *Stewart* v. *Matheny*, as announced in that opinion, is that a purchaser of land under judicial decree may be excused from the requirement of forming a correct opinion as to the validity of his purchase. He is not excused from forming some opinion, nor can he claim ignorance

of the decree.   But if his opinion is not correct, he is excused. It may well be questioned if this excuse did not refer only to decrees of the probate court, "under the view taken of that court by the appellate court." But, however that may be, the exception was expressly made in reference to *Cole* v. *Johnson*, and that case, so excepted, differs from this in the material respect of confirmation, and was a case in which the sale was incomplete for want of confirmation.   In this view, the cases of *Cole* v. *Johnson* and *Stewart* v. *Matheny* are satisfactorily harmonized, but otherwise are in irreconcilable conflict.   For why, on principle, in the absence of an adjudication of regularity, such as judicial confirmation, should not a decree carry notice of defects?   No reason, in fact, exists why purchasers should be bound to take notice of defective deeds or wills, that does not equally apply to judicial proceedings, especially where they are not adjudged regular by confirmation.   According to the rules relating to *bona fides* in acquiring title, decrees are no exception to the requirement that purchasers must take notice of everything appearing on the face of their title papers.

In *Canning Co.* v. *Foster*, 17 So. Rep., 683, Cooper, C. J., says: "The commissioner's right and power to sell were derived from and rested upon the decree, as the recital in the conveyance itself showed.   Neither the decree nor the deed, standing alone, was sufficient to convey title.   Together and constituting one inseparable and indivisible unit, they formed a single link in the chain of title.   Registration of the deed warned those who sought to secure the title it professed to convey that further and additional information should be sought by examination of the proceedings under which the sale was made. Of the facts which such an examination would disclose, purchasers were bound to take notice at their peril." And this was but an application of the same rule of notice which, in *Stewart* v. *Matheny*, was invoked to bar a claim for improvements made in actual good faith.

Why, on principle, should purchasers be bound to take notice

of defective judicial proceedings occurring in their chain of title when their rights to the land itself—the subject of their purchase—is in question, and not when the lesser and incidental thing—the right to recover for improvements—is involved? The identical rule of notice being applied to both subjects, it is plainly inconsistent to make an exception in one case and not in the other. The application of the rule may be denied, as it was in *Cole* v. *Johnson;* but when it is asserted, as it was in *Stewart* v. *Matheny*, it should seem that a similar application should be made in both cases. The question is, whether actual ignorance of defects, in spite of constructive notice, is sufficient to entitle one to recover for improvements; or whether constructive notice, in spite of actual ignorance, is sufficient to defeat recovery. Either one or the other must prevail; both cannot. If *Learned* v. *Corley*, on its facts, is to stand overruled, it is an exception which is proved by every rule of precedent and principle to be arbitrarily, and without reason, opposed to the rule itself. But by maintaining that decision on its facts, because the sale in that case was incomplete for want of ratification by the court, and thus distinguishing it from *Cole* v. *Johnson*, which also can be sustained because there was ratification, the authority of both can stand. For the fact of ratification by the court is ample excuse to purchasers searching the record for looking no further for defects. By the fact of ratification the court has cured all defects as to purchasers, and perfected the sale, and the purchaser may rest there. But when the court has for any reason not ratified and confirmed the sale, when it remains incomplete, and, especially in the case of sale of land belonging to a minor, liable to be set aside, when, also, it is in the power of the purchaser to obtain confirmation for the asking, can he be said to be a *bona fide* purchaser, being bound to know all these things under the rule in *Stewart* v. *Matheny*, if he accepts the void deed of the guardian, and by his own fault or neglect fails to secure the ratification of the court? That he may have paid a part or the whole of the

purchase money can make no difference. *Tooley* v. *Gridley*, 3 Smed. & M., 493; *State* v. *Cox*, 62 Miss., 786; *Fearing* v. *Shafner*, *Ib.*, 791; *Brooks* v. *Kelley*, 63 *Ib.*, 616; *Pool* v. *Ellis*, 64 *Ib.*, 555; *Campe* v. *Saucier*, 68 *Ib.*, 278; *Alsobrook* v. *Eggleston*, 69 *Ib.*, 833; *Maynard* v. *Cocke*, 18 So. Rep., 374. After confirmation, the sale is in every respect as complete as if made by the parties in interest, instead of by the court, and will only be set aside for the same causes which will operate as between the parties. *Berlin* v. *Melhorn*, 75 Va., 639.

But, under the case last cited from this court, the purchaser of land of a minor before confirmation gets neither title nor any absolute right to obtain title. *Allen* v. *Martin*, 61 Miss., 78. And, because the guardian's deed expressly referred to the decree for sale as authorizing it, and that decree showed an absence of ratification by the court, the decree and deed together forming an indivisible unit in the chain of title, every subsequent purchaser was bound to take notice of the defect. *Stewart* v. *Matheny, supra.*

Especially were those who purchased after the removal of the guardian, on April 10, 1882, bound to take such notice, for, being, by their chain of title, put on inquiry as to the reasons why the sale was never confirmed, examination would have disclosed to them that the guardian was removed on a petition which showed that he had misappropriated a portion of the purchase money received by him at the very sale under which they claim. In this predicament were the purchasers at the sale by Birmingham's executor, which occurred on March 10, 1884, nearly two years after the removal of the guardian. From these parties appellees derive title to forty-four acres. The remaining sixty acres are owned by defendants as heirs of Birmingham, not as purchasers, and, as to this portion, they can in no event be classed as *bona fide* purchasers without notice.

In support of the right to recover for improvements, the case of *Pool* v. *Ellis*, 64 Miss., 555, will be cited by opposing

counsel.   We do not regard that case as authority for the re-
covery.   It is true that, in that case, the chancellor allowed
the purchaser, at an unconfirmed administrator's sale, to re-
cover the value of his improvements, but neither in the court
below, nor in this court, does there seem to have been any ob-
jection to the allowance.   The case was decided wholly on other
points; besides, the parties against whom recovery was had,
acquiesced in the decision on the right of the purchaser to re-
cover his improvements.   And there seem insuperable difficul-
ties in the way of adopting the view of the chancellor in that
case.   He held the purchaser in under contract of sale, and
yet charged him with both rents and purchase money; but in
fact he was in under a statutory proceeding which was a nul-
lity unless conducted in accordance with the statute.   *Stamp-
ley* v. *King*, 51 Miss., 728.   And if defective, no equitable
rights could arise; the purchaser got either the full legal title
or none at all.   *Young* v. *Lorraine*, 11 Ill., 624.   Opposing
counsel seems to apprehend that if the claim for improvements
is rejected, appellant will still recover all the rents arising from
the improvements.   This fear is groundless, as, if the improve-
ments are disallowed, so will be the rents to the extent that
they arose from the improvements.   *Tatum* v. *McClellan*, 56
Miss., 352.

The true measure of defendants' recovery for improvements,
was not the cost of making or replacing them, but the enhance-
ment in the value of the land by reason thereof.   *Nixon* v.
*Porter*, 38 Miss., 401, 416; *Wilie* v. *Brooks*, 45 *Ib.*, 542, 551;
*Clark* v. *Hornthal*, 47 *Ib.*, 434, 476; *Massey* v. *Womble*, 69
*Ib.*, 347; *Bright* v. *Boyd*, 1 Story R., 478, s.c. 2 *Ib.*, 607;
1 Sedgwick Dam., p. 127, note *c;* Story's Eq. Juris., sec. 799;
3 Sutherland Dam., sec. 999; Cooley Const. Lim., top p. 478,
479 (5th ed.); *Brown* v. *Storm*, 4 Vt., 37; *McMurray* v. *Day*,
70 Ia., 67; *Fisher* v. *Edgington*, 85 Tenn., 27; *Pacquette* v.
*Pickners*, 19 Wis., 235; *Fletcher* v. *Brown* (Neb.), 53 N. W.
Rep., 577; *Wells* v. *Newson*, 76 Ia., 81: *Williams* v. *Vander-*

*bilt*, 145 Ill., 238; *Breit* v. *Yeaton*, 101 Ill., 541; *Ebelmesser* v. *Ebelmesser*, 99 Ill., 541; *Woodhull* v. *Rosenthal*, 61 N. Y., 382, 396; *Willingham* v. *Long*, 47 Ga., 540; note to *Barrett* v. *Stradl*, 9 Am. St. Rep., 805; *Wetherell* v. *Gorman*, 74 N. C., 603; *Daniel* v. *Crumpler*, 75 N. C., 184; *Smith* v. *Stewart*, 83 N. C., 406; *Railroad Co.* v. *McCaskill* (N. C.), 4 S. E. Rep., 468; 6 Am. & Eng. Enc. L., 245*aa*; 10 *Id.*, 244; *Noble* v. *Biddle*, 81 Pa. St., *430; *Johnson* v. *Futch*, 57 Miss., 73, 80; *Childs* v. *McCoy*, 18 Ia., 261; *McCoy* v. *Grandy*, 3 Ohio St., 463; *Whitney* v. *Richardson*, 31 Vt., 300, 306; *Thomas* v. *Malcolm*, 39 Ga., 328; *Booth* v. *Vanarsdale*, 9 Bush (Ky.), 718.

*T. H. Campbell*, for appellees and cross appellants.

There can be no doubt of the defendant's right to the value of improvements, under the decision of this court in *Cole* v. *Johnson*, 53 Miss., 94, overruling *Learned* v. *Corley*, 43 *Ib.*, 687. The cases cited by counsel in support of the contention that defendants are not entitled to the value of the improvements made by them, because an examination of the chancery proceedings, in the matter of the guardian's sale, would have disclosed the defects which it is asserted rendered the title of the purchaser void, are cases where the record would have shown that the title the parties purchased was a life estate and not the fee, and comes directly under the rule announced in *Miller* v. *Palmer*, 55 Miss., 323, except the case of the *Gulf Coast Canning Co.* v. *Foster*, 17 So. Rep., and the case of *Alsobrook* v. *Eggleston*, 69 Miss., 833. The case of *Stewart* v. *Matheny*, cited (66 Miss., 21), expressly makes the distinction set out in the case of *Miller* v. *Palmer*, *supra*. The case of the *Gulf Coast Canning Co.* v. *Foster*, 17 So. Rep., 684, was decided on a different and familiar principle—that a party purchasing at a judicial sale must take notice whether or not the court had jurisdiction. The court in this case says: "An examination of the records of the federal court would have shown that it had no

jurisdiction of the parties or the subject-matter.'' Surely it is not contended that the chancery court had no jurisdiction to decree a sale of the ward's land. In this case, too, there was no claim entered for improvements.

The case of *Alsobrook* v. *Eggleston, supra,* involved no question of improvements, and the court evidently was of the opinion that Eggleston knew of the invalidity of his title from his conduct, and the case was decided upon the theory that Eggleston, learning of the invalidity of the title, abandoned the purchase, as shown by his conduct in not recording the commissioner's deed, and in purchasing the interest of the other ·co-tenant, Payne. In other words, the facts proved that Eggleston had actual notice of the defective title conveyed by the commissioner. It is not even contended that defendants did not honestly believe that their title was good, and their entire conduct shows that they did so believe.

In the case of *Pool* v. *Ellis,* 64 Miss., 556, the court allowed the defendants for improvements, and this action of the chancellor was affirmed by the appellate court. In this case the sale to Pool was never confirmed, and, though he paid the purchase money to the administrator, the court held that this payment was to the agent of Pool. The purchaser himself was allowed for the improvements, and if, as contended by counsel, want of confirmation would render a purchase *mala fide,* so as to deprive him of the value of the improvements, then it seems this court would have so declared, but, on the contrary, it affirmed the action of the chancellor.

We come now to consider the remaining question raised by appellant on her direct appeal, which is as to the basis of ascertaining the value of the improvements to the lands. If we understand the position of opposing counsel, it is that the only mode of ascertaining the value of the improvements is, to ascertain, at the time of hearing, the market or vendible value of the lands and the value of the lands in the condition they were without the improvements, and, subtracting the one from the

other, thus obtain the value of the improvements.   This court
has not announced any definite rule on this question, but, in
the case of *Massey* v. *Womble*, 69 Miss., 347, cited by the ap-
pellant, seem to leave the matter to be governed by the partic-
ular facts in the case.   See *Johnson* v. *Futch*, 57 Miss., 80,
81, a case that ought to determine the question in favor of
appellees.

*Brame & Alexander*, on the same side.

1. The statute as to profits and improvements in ejectment
on its face excludes the idea that the enhancement of vendible
value is alone to be allowed, else why provide that the jury
shall "find the actual cash value of such improvements," etc.;
why find the "value of the mesne profits and damages," unless
it is to set them off against the improvements?   It is true the
jury is required to find also the "actual cash value of the lands
without improvements," but this is to measure the sum to be
paid by defendant in case plaintiff does not pay the excess, if
any, of improvements over rents.   The very verbiage and ex-
plicit directions of the statute exclude the idea that the enhance-
ment of vendible value is to be the measure of defendant's
allowance.

As stated by associate counsel, the case is controlled by
*Johnson* v. *Futch*, 57 Miss., 73, which is the only case where
our court has minutely passed on the whole matter of the char-
acter of the accounting where mesne profits are claimed on one
side and improvements on the other in cases where one has
purchased and improved in good faith.   The same doctrine
announced in this case is recognized in *Miller* v. *Ingraham*, 56
Miss., 510, and *Hudson* v. *Strickland*, 58 Miss., 186.   The
latter case allowed to defendant the value of the improvements
placed on the land after suit filed so far as they had enhanced
the value of the land or were necessary.   *Johnson* v. *Futch*
says: "The principle of the statute is more favorable to the
defendant" than the old law.

The case mainly relied on by appellant (and the only one on this point subsequent to *Johnson* v. *Futch*, which he cited) is *Massey* v. *Womble*, 69 Miss., 347. It will be seen, however, from the opinion and the statement of facts, that the court did not commit itself to the basis of accounting adopted, nor pass on it. It approved the result, or, rather, declined, in view of the facts, to disturb the result.

The case of *Clark* v. *Hornthal*, 47 Miss., 334, decided nothing. Only two judges sat in it, and they disagreed on the main point. It is not true that Judge Peyton said, in that case, that the "increase in valuation" is the measure of recovery. He cited a Kentucky case or two which so held, but he proceeded (page 479) to direct an account not of such vendible value, but "of the value of the improvements put by defendants on the land," and said complainant must pay them for "the money paid out and improvements, less the rent or profits."

*Wilie* v. *Brooks*, 45 Miss., 542, does not announce that the increase in the vendible value is to govern. The facts are not fully set out in the report of the case, but it is evident that defendant was claiming the cost of his improvements instead of the value, and Judge Tarbell says (page 551): "Complainant is not entitled to all the expenditures and disbursements, but to the enhanced value of the property," etc. As much as to say that, before recovering for an expenditure, it must be such as enhances the value of the land, *i. e.*, permanent and useful, and the reasonable value, not the cost price, is to govern. The opinion then adds that the rule is further stated in code 1857, wherein, if the improvements exceed the rents, etc., not the enhanced vendible value, but the "improvements" in excess of the rents, is to be a lien, etc. This case was not a decision on an accounting, but the opinion assumed to give direction for a future accounting.

The remaining case relied on by the appellant (*Nixon* v. *Porter*, 38 Miss., 401), is far from sustaining his contention. It recognizes the rule announced in *Johnson* v. *Futch*, for it

denied plaintiff rents on the basis of the enhanced value of the land.   If appellant can succeed in restricting us to the enhanced vendible value of the land, surely she cannot get rents on the enlarged basis.   Without the improvements there would be no rents.

2. That defendants are entitled to be allowed for their improvements is not an open question.   It is presumable that this court in overruling *Learned* v. *Corley*, 43 Miss., 687, as it did do in *Cole* v. *Johnson*, 53 Miss., 94, proceeded with due care, and earnestly considered the question here revived.

The cases of *Pass* v. *McLendon*, 62 Miss., 580, and *Stewart* v. *Matheny*, 66 *Ib.*, 21, are not in point.   In those cases the life tenant, or one holding under him, improved his own property, and, not being chargeable with the rents, was held not entitled to improvements.

Argued orally by *J. B. Thompson*, for appellant, and by *C. H. Alexander*, for appellees.

WOODS, C. J., delivered the opinion of the court.

The sale of the lands in controversy by the former guardian of appellant, on April 26, 1879, was not only never reported to nor confirmed by the court under whose decree the same was made, but there is a total failure of evidence showing any attempt at compliance with the terms of sale prescribed by the decree.   There is a recital, vague and inferential, in the guardian's deed to the purchasers at that sale, of his receipt of half the price bid from the purchasers, in cash; but this was before any report or confirmation of sale (there never having been, in fact, at any time, any report or confirmation, as already stated), and, under well-known rules of law in such cases, this half of the bid thus handed over in cash to the guardian, was merely a delivery to him as a depositary of the purchasers.   As to any payment of the deferred half of the price bid by the purchasers at that sale, the record is silent.   The sale was made without

compliance with the decree ordering it, and was never reported
to or confirmed by the court.   It was, therefore, void, and con-
veyed no title.   With the fatal infirmity inhering in the convey-
ance taken by them, it cannot be pretended the purchasers were
ignorant; and of the rottenness of this first link in the chain of
title of the defendants, they are chargeable with notice.   This
deed from the guardian to the purchasers at the said sale, with
the record of the proceedings of the court ordering it, and with
the absence from that record of any report of sale by the guard-
ian, and confirmation of it, would have shown, upon the most
cursory examination, that the sale was void.   The deeds of the
guardian alone did not and could not confer title, but the decree
of confirmation of the sale by the court was necessary.   These
deeds themselves, on their face, showed that something further
than their recitals was necessary to be sought by an intending
purchaser, and that this something else would be found in the
decrees of the proper court, and the failure to seek this further
information in the proceedings of the court, was such negli-
gence as is inconsistent with a claim of title by a purchaser in
good faith without notice.   Without dwelling upon this point,
we are of opinion that the court below very properly decreed
Frances Hicks to be the owner of the land.

Two errors are assigned as grounds for reversal on the direct
appeal, viz.: (1) The court erred in allowing defendants to re-
cover for the value of improvements made by them on the land,
and (2) the court erred in allowing defendants to recover the
cost of such improvements, instead of the amount by which
the same was shown to have enhanced the value of said land.
We consider these in their order.   In *Learned* v. *Corley*, 43
Miss., 687, this very question of the right of a purchaser whose
title was derived through a sale, under a decree of court never
reported and confirmed, to claim compensation for improvements
by a claim of title honestly entertained, was considered and
determined agreeably to the view upon which appellant's first
assignment of error rests.   The reasoning of the court in that

case was largely upon the purpose and effect of registry laws, and the curious result seems to have been reached of imputing *mala fides* to one whose claim for improvements was derived from a sale never confirmed, though the claim was honestly made and the improvements created in ignorance of the invalidity of his title. We agree with the able counsel for appellants, that the decision of *Learned* v. *Corley* practically denies the sufficiency of actual good faith and honest ignorance of defects to support a claim for improvements where the claimant's title papers disclosed the invalidity of his title itself to the land. But the learned counsel frankly concedes that in *Cole* v. *Johnson*, 53 Miss., 94, the case of *Learned* v. *Corley* is expressly overruled. The concession, however, is thought by appellant's counsel to be harmless, because of the supposed mistake of fact said to be apparent in *Cole* v. *Johnson*. It is said by counsel that *Cole* v. *Johnson* rests, in part, upon the mistaken assumption that there had really been a confirmation of the sale in the case of *Learned* v. *Corley*. Repeated examinations of that case satisfy us that the very able judge who delivered the opinion in *Cole* v. *Johnson* was not misled by any misapprehension of fact. Said Chalmers, J., in that case: "The doctrine thus enunciated (in *Learned* v. *Corley*) was manifestly an *obiter dictum*. . . . The court had already declared that the claim for improvements could not be maintained, because there was no demand for mesne profits by the plaintiff; and this view was decisive of the case. All that was subsequently said, therefore, is entitled only to such persuasive force as its own intrinsic merits demand; and, after mature reflection, we must announce our dissent from so much of the opinion as holds that the value of permanent improvements is not recoverable, where the defect in the title is discoverable by an examination of the records of the county."

Having thus shown that what was said in *Learned* v. *Corley* on this proposition was dictum, and having declared the dissent of the court from the erroneous view embraced in that

dictum, Mr. Justice Chalmers then proceeds briefly, but unmistakably and unanswerably, to overwhelm the erroneous proposition asserted in *Learned* v. *Corley*. The opening sentences of his argument disclose the impregnable ground upon which it rested: "The requirement that the party making improvements 'shall claim the premises under some deed or contract of purchase made in good faith,' must mean nothing more than an honest belief on his part that he is the true owner. The expression, 'some deed or contract of purchase,' of itself negatives the idea that it is the true title which he must have, and plainly indicates that what the law calls 'color of title' will be sufficient. Indeed, if he were the purchaser of the true title, there would be no occasion for him to invoke the protection of the statute, since he could never be dispossessed, and hence could never be compelled to make claim for improvements. But does not the rule that he shall be denied them if by an investigation he could have discovered the defect in the title, practically abrogate the statute?" And then follows the opinion, based upon inexpugnable reasoning, which had been supposed, until the oral presentation of the views of appellant's counsel at bar, to have forever, in this state at least, settled adversely the contention that an occupant of land under color of title, and in ignorance of any outstanding paramount title, and in the absence of any circumstances showing that he had come to suspect the validity of his title, can be denied compensation for improvements by an imputation of *mala fides* because of a failure to examine the public records of the county.

But *Cole* v. *Johnson* has been cited with approval and relied upon as settled authority over and over and over again by this court. *Gaines* v. *Kennedy*, 53 Miss., 103; *Morgan* v. *Hazlehurst Lodge*, 53 Miss., 665; *Emrick* v. *Ireland*, 55 Miss., 390; *Holmes* v. *McGee*, 64 Miss., 129; *Stewart* v. *Matheny*, 66 Miss., 21. In the last name dcase, *Cole* v. *Johnson* and *Pass* v. *McLendon*, 62 Miss., 580, are both cited, and both approved and adhered to, and are shown not to be in conflict. Said Judge Campbell, in *Stewart*

v. *Matheny:* "In *Cole* v. *Johnson*, 53 Miss., the expression, 'good faith,' employed by our statute on the subject of the right of the defendant in ejectment to claim for improvements, was held not to exclude the claim of one who had, purchased land at a sale under a decree of the probate court, and paid for it and improved it, believing his title to be perfect. In *Pass* v. *McLendon*, 62 Miss., one who had purchased land from a tenant for life, who held under a will of record in the county in which the land lay, in ignorance of the fact that his vendor did not have the fee, and believing that he acquired the fee, was not entitled to pay for improvements made by him during the existence of the life estate. We adhere to both cases. One might well be excused from the requirement of forming a correct opinion as to the validity of a sale of land under the decree of the probate court, under the view taken of that court by the appellate court, and was not chargeable with bad faith or gross negligence (its equivalent) for believing, until informed to the contrary, that a sale made by a decree of the court intrusted with jurisdiction over the subject and parties, was regular and conferred title.

"But the purchaser of land must be conclusively presumed to know what appears on the face of the title papers under which he claims, and this presumption cannot be rebutted or explained away. He must take notice of his title as being to a life estate or a fee, where that title is plainly disclosed by the records accessible to him, and not to examine which, ordinarily, would be gross negligence."

The defendants were clearly entitled to compensation for improvements, as well as taxes, under an unbroken line of decisions in this state, beginning with *Cole* v. *Johnson*, they claiming the lands on which the improvements were put under some deed acquired in good faith.

We are thus brought to consider the measure of the recovery for improvements, the second assignment of error being that the court mistook the law in permitting the defendants to re-

cover the cost of the improvements, instead of the amount of the enhancement in value of the lands by reason of the improvements. This assignment is well taken, and the question raised by it is not one of first impression with us. See *Nixon* v. *Porter*, 38 Miss., near bottom of page 416, where it is said that the defendant is to be allowed for the value his improvements have added to the land. See *Wilie et al.* v. *Brooks*, 45 Miss., p. 551, where it is declared that the complainant is entitled only to the value of the property as enhanced by the additions and ameliorations. Payton, C. J., in his opinion in *Clark et al.* v. *Hornthal et al.*, 47 Miss., 478, approves the rule of measuring the liability for improvements by the increase in the vendible value of the land. And, in *Massey* v. *Womble*, 69 Miss., this court declined, on all the facts of that case, to disturb the decree of the court below, based on the report of its commissioner, which allowed the defendants credit for the enhanced vendible value of the land, and for taxes paid, and interest thereon, and charged them with the rental value of the land during their possession, and interest thereon.

The report of the commissioner in the case in hand shows that the present value of the lands without the improvements is $500, and with the improvements $1,500; and yet, by the decree of the court below, the improvements, exclusive of taxes paid by defendants, are valued at $1,600, which makes the improvements alone worth $100 more than the land and improvements together. Manifestly, the sum of $1,600 is the amount expended in making the improvements, or estimated to be necessary to replace the improvements if they were taken away, and not the amount of the enhanced vendible or rental value of the lands. And this enhanced vendible or rental value is synonymous with the statutory words "actual cash value of such improvement." The enhanced vendible or rental value means nothing more or less than the actual cash value of the improvements, if they were sold for their fair value, as they affect the vendible value of the land.

The case of *Johnson* v. *Futch,* 57 Miss., is perfectly recon-
cilable, on its facts, with the cases already cited. We thor-
oughly approve the rule laid down in the last named case, viz. :
That the value of improvements should be assessed on a basis
co-extensive in time with the estimate of rents and profits which
they contributed to produce, so as to allow the defendant for
all his improvements of which the plaintiff recovers the benefit;
but this does not mean that the defendant is to be allowed ex-
travagant expenditures, or even necessarily actual cost for all
the improvements he may have seen fit to place on the land, or
that he is entitled to the cost of replacing such improvements
if they were regarded as not on the land. The defendant is to
be allowed for improvements to the amount of the enhanced
value of the lands, regard being had to the natural and proper
uses for which the land is fitted and to which it is devoted.

It follows that the court below erred in allowing defendants
the cost of the improvements instead of allowing them the
amount of the enhanced value imparted to the land by reason
of the improvements, and for this error the decree will be re-
versed.

On the cross appeal, we have to say that we have already
considered the action of the court below in declaring Frances
Hicks to be the owner of the land, and it is unnecessary to
repeat what has been said already. We see no error in the
action of the court in any other particular. Reversed on direct
appeal, and affirmed on cross appeal.

*Reversed and remanded.*

*T. H. Campbell* and *Brame & Alexander,* for appellees,
filed separate suggestions of error, insisting that if in the ac-
counting the court below erred against appellant in allowing the
cost value of the improvements, it also erred against the ap-
pellees in charging the increased rents resulting from the im-
provements; and that if there was a reversal of the appeal on
the one account, there should also be one of the cross appeal on

the other.   In support of their contention they cited *Staton* v. *Bryant*, 55 Miss., 261; *Miller* v. *Ingram*, 56 *Ib.*, 510; *Tatum* v. *McClellan*, *Ib.*, 352.

Woods, C. J., delivered the following response to the suggestion of error.

In the opinion of this court, in which error in now suggested, we held that the defendants below—appellees here—were to be allowed the sum of the enhancement in value of the lands, imparted to them by reason of improvements made upon them by defendants, and not the sum of the cost of making such improvements, nor the sum necessary to replace the improvements if they were considered as removed and not on the lands.   The correlative of this rule was also bound up in the former opinion delivered · by us, to wit. : that the defendants were properly chargeable with the enhanced rental value of the lands after the improvements were made or placed upon them.   The full rule is, allowance to defendants for improvements to the extent of the enhanced vendible value of the lands imparted by such improvements, and liability for enhanced rental value imparted by the same improvements.   This rule is so just, so reasonable, so fair to both parties, that we must adhere to it.

The suggestion of error is based upon a total misapprehension of the scope and effect of the former opinion, in so far as it assumes that the enhanced vendible value of the lands by reason of the improvements, was either found by the court below or passed upon at all by us.   The decree of the court below found nothing and settled nothing as to the enhancement in the vendible value of the lands imparted to them by the improvements, and, necessarily, our former opinion does not even refer to this question.   On the return of the case now to the court below, that court will examine and determine, for the first time, this very question.

*Suggestion of error overruled.*