THADDEUS W. STEWART ET AL. *v.* JOSEPH M. MATHENY.

1. NOTICE. *Recital in deeds.*
   A purchaser of land is conclusively presumed to know what appears on the face of the title-papers under which he claims.

2. LIFE TENANT. *Claim for improvements. Case in judgment.*
   Where, by a deed duly recorded, a life estate is created, one having title to land derived under mesne conveyances from the life tenant, who erects permanent improvements on the land, takes the risk of the duration of the life estate, and cannot, after the termination thereof, charge the land as against the remainder-man with the value of the improvements.

3. ESTOPPEL. *Remainder-man not estopped, when.*

The mere fact that the remainder-man stood by and permitted improvements to be made on the land by the life tenant and did not give notice of his claim will not estop the remainder-man from claiming the improvements after the life estate is terminated. Knowledge that the improvements are being made imposes no obligation on him to object.

4. PURCHASE OF TAX-TITLE BY LIFE TENANT.

A tenant for life cannot acquire a tax-title to the defeat of the remainder-man.

APPEAL from the chancery court of Monroe county.

HON. BAXTER MCFARLAND, Chancellor.

The lot in controversy was originally owned by Atkinson Stewart, who, in 1840, conveyed it by deed duly recorded, to trustees for the use of Mary Stewart for her life, and after her death to his children then living. Appellee Matheny obtained title and possession of the lot under successive conveyances from the life tenant, Mary Stewart, which deeds purported to convey the fee.

Prior to the purchase by Matheny his immediate vendor had purchased the lot at tax sale, and this title is relied on by Matheny.

This bill is filed by the children of Atkinson Stewart, after the death of Mary Stewart, their mother, seeking to cancel the title of Matheny and obtain possession of the lot, inasmuch as the life estate had terminated.

Matheny answered and also filed a cross-bill, setting up his title as stated above, and praying for confirmation of his tax-title, and, failing as to these matters, for compensation for the permanent and valuable improvements which he alleges he had erected on the lot " in good faith, without knowledge or suspicion of any outstanding title."

The complainants demurred to the cross-bill, and from a decree overruling the demurrer prosecute this appeal.

*Bristow & Walker*, for appellants.

Confirmation of the tax-title cannot be had in this proceeding, as it would require, under § 578 of code of 1880, additional parties.

The purchase of the tax-title to the land was *a redemption.* The life tenant cannot purchase a tax-title and defeat the remain-

der-man. The statute of limitations did not begin to run against the remainder-man until after the termination of the particular estate. Tyler on Eject., pp. 117 and 118 ; 3 Wait's Ac. and Def. 101 ; *Gibson* v. *Jayne,* 37 Miss. 164.

The appellee is not entitled to compensation for improvements erected during the existence of the particular estate.

The case of *Pass* v. *McLendon,* 62 Miss. 580, is conclusive on this point. The rule is the same in equity as at law ; the statute (Code, § 2512) controls in both. See *Moody* v. *Harper,* 38 Miss. 625, 626 ; *Sivley* v. *Summers,* 57 Miss. 712 ; *Gaines* v. *Kennedy,* 53 Miss. 103 ; *McGee* v. *Wallis,* 57 Miss. 638 ; *Johnson* v. *Futch,* 57 Miss. 73.

The case of *Cole* v. *Johnston,* 53 Miss. 94, and cases which are relied on to prove a contrary rule, are cases where the title was *originally defective.* There is an essential difference between the case of compensation for improvements where the title was originally *defective,* or has *failed,* and the case where it was originally *good,* but has *expired.*

In one case a man is improving *another* man's property, and in the other case he is improving *his own.*

In all cases, ancient and modern, English and American, the rule is broadly stated, that the tenant for life (or his vendee) cannot recover from the remainder-man compensation for new and original improvements made during the existence of the particular estate. 1 Washburn's Real Prop. 110 ; *Corbet* v. *Lawrens,* 5 Rich. Eq. 301 ; *Hibbert* v. *Cook,* 1 S. & S. 552 ; *Sohei* v. *Eldridge,* 103 Mass. 351 ; *Dent* v. *Dent,* 30 Beavan 363 ; *In re Leigh's Est.,* L. R. 6 Ch. App. 887 ; *Floyer* v. *Bankes,* L. R. 8 Eq. 115.

Matheny is conclusively presumed to know all that appears on the face of the deeds under which he holds. *Wailes* v. *Cooper,* 2 Cush. 208 ; *Martin* v. *Nash,* 31 Miss. 324 ; *Claiborne* v. *Holmes,* 51 Ib. 151 ; *Loughridge* v. *Boland,* 52 Ib. 553 ; *Deason* v. *Taylor,* 53 Ib. 697 ; *Mangold* v. *Barlow,* 61 Ib. 593 ; 3 Wait's Ac. and Def. 449.

*E. H. Bristow,* for appellants, argued the case orally.

*Clifton & Eckford,* for appellee.

The lot was sold to the state in 1861 for the taxes of 1860. W. M. Hampton bought the lot from the state on September 16, 1870. Honea & Co., of which firm Hampton was a member, purchased the land in 1868 from Robinson and wife, the vendees of Mrs. Stewart. Therefore, the lot had been forfeited to the state more than seven years before Honea & Co. became interested in it. At the time of its forfeiture, they were not liable for the taxes, and long before they got their deed it had been sold. Even if the deed by Robinson and wife had conveyed to Honea & Co. the life estate of Mrs. Stewart, this would not have prevented their purchase of an outstanding tax-title. *Rule* v. *Broach*, 58 Miss. 552.

The claim for improvements should have been allowed. *Pass* v. *McLendon*, 62 Miss. 580, was an action of ejectment, and is not an authority on this point, for this is an equity case. The equity jurisdiction is much broader and fuller than that of the law courts, which are circumscribed by statutory regulations. *Loeb & Bloom* v. *Morton*, 63 Miss. 288.

The common-law rule on this subject excluded the claim for improvements in all cases. The civil law allowed them in all cases where placed upon the land by a *bona fide* possessor. 2 Story Eq. 1239 and 799 b; *Green* v. *Biddle*, 8 Wheat. 1; *Williams* v. *Gibbs*, 20 How. 538; *Bright* v. *Boyd*, 1 Story Rep. 478; *Cole* v. *Johnston*, 53 Miss. 99; Sedgwick & Wait on Trials of Title to Land, §§ 690, 69. Our own court has incorporated the civil law rule into the equity jurisprudence of this state. *McGee* v. *Wallis*, 57 Miss. 642, 644. Equity rids itself of the technical rule of the notice, inferred or presumed by registration, and leaves the question of *good faith* an open one, to be determined by the court from all the circumstances in the case. 2 Story Eq., §§ 1237, 797 a; 3 Pomeroy Eq., § 1241; *Cole* v. *Johnson*, 53 Miss., 97; *Bank* v. *Hudson*, 111 U. S. 77; *Kelly* v. *Wagner*, 61 Miss. 299; *Plimpton* v. *Plimpton*, 12 Cushing 458.

It makes no difference that there is an *expiration* of a particular estate, and not a *failure* of title. *Whitney* v. *Richardson*, 31 Vt. 301.

The improvements were put upon the lot under such circumstances as required appellants to give notice to appellee of their

rights. It would not only be an injustice, but, under the circumstances of this case, it would be a *fraud* to give complainants the property with its improvements. 1 Story Eq., § 388 ; 2 Pom. Eq., §§ 807, 818, note 2 ; *Bright* v. *Boyd*, 1 Story Rep. 478 ; *Kelly* v. *Wagner*, 61 Miss. 299.

*W. H. Clifton* argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

If the rule which denies to a tenant for life of land compensation for improvements he puts on it during the continuance of his estate is subject to exceptions, the facts of this case do not constitute one.

In *Cole* v. *Johnson*, 53 Miss. 94, the expression " good faith " employed by our statute on the subject of the right of the defendant in ejectment to claim for improvements was held not to exclude the claim of one who had purchased land at a sale under a decree of a probate court and paid for it and improved it believing his title to be perfect.

In *Pass* v. *McLendon*, 62 Miss. 580, one who had purchased land from a tenant for life, who held under a will of record in the county in which the land lay, in ignorance of the fact that his vendor did not have the fee, and believing that he acquired the fee, was not entitled to pay for improvements made by him during the existence of the life estate.

We adhere to both cases. One might well be excused from the requirement of forming a correct opinion as to the validity of a sale of land under a decree of the probate court under the view taken of that court by the appellate court, and was not chargeable with bad faith or gross negligence (its equivalent) for believing until informed of the contrary, that a sale made by decree of the court intrusted with jurisdiction over the subject and parties was regular and conferred title.

But the purchaser of land must be conclusively presumed to know what appears on the face of the title papers under which he claims, and this presumption cannot be rebutted or explained away. He must take notice of his title as being to a life estate or a fee, where

that title is plainly disclosed by the records accessible to him, and not to examine which, ordinarily, would be gross negligence.

" The law will not permit him to deny notice by insisting that he had not read the deed." *Wailes* v. *Cooper,* 24 Miss. 208 ; Wade on the Law of Notice, § 308 ; *LeNeve* v. *LeNeve,* 2 Lead. Cases in Eq., p. 169.

Upon the facts of this case the holders of the land during the life estate must be held to have known the nature and duration of their estate and to have improved it for themselves, taking the risk of its duration, and nothing is shown to entitle the life tenant to pay for improvements.

The averment that the remainder-men stood by and permitted the improvements to be made and did not give notice of their claim is not sufficient to sustain the claim of an estoppel against them, because there is nothing to show an obligation on them to interpose.

The claim of title under the tax-title set forth by the cross-bill cannot be maintained. A tenant for life cannot acquire a tax-title to the defeat of the remainder-man.

*The decree overruling the demurrer to the cross-bill is reversed, the demurrer sustained and cause remanded.*