ZOA L. HAYWOOD (WIDOW), v. WILLIS BRIGGS, GUARDIAN FOR MRS. MARY E. MIDDLETON, MRS. MARY E. MIDDLETON, R. H. RIGSBEE AND WIFE, LELIA N RIGSBEE, ROSA L. FULFORD AND HUSBAND, W. A. FULFORD, MATTIE T. BITTING, UNMARRIED, D. L. BOONE, D. L. BOONE, SUCCESSOR COMMISSIONER OF THE COURT IN THE CASE OF SALLIE A. RIGSBEE, ET AL., AGAINST ZOA L. HAYWOOD, ET AL.; FIDELITY BANK OF DURHAM, N. C., TRUSTEE IN THAT CERTAIN DEED OF TRUST FROM SALLIE A. RIGSBEE, COMMISSIONER, RECORDED IN BOOK OF MORTGAGES 252, AT PAGE 437, IN THE REGISTER OF DEEDS OFFICE OF DURHAM COUNTY, AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

(Filed 31 January, 1947.)

**1. Estates § 9a: Landlord and Tenant § 15½—**

The death of the life tenant terminates a lease executed by her and all rights or agreements therein created, and title passes to the remaindermen by operation of law unaffected by the lease.

**2. Estates § 9b: Fixtures § 4—**

The remaindermen are not privies to a lease executed by the life tenant, and upon the death of the life tenant, her lessees are not entitled to

assert against the remaindermen an agreement in the lease giving lessees the right to remove improvements placed upon the land by them.

**3. Estates § 9b: Fixtures § 5—**

While by agreement between lessor and lessee, fixtures which would otherwise be classified as realty may be deemed personalty and removable as trade fixtures, such right of removal cannot be asserted by lessee of a life tenant as against the remaindermen, since the remaindermen were not in privity. In the instant case, no equities were involved since lessees erected a tobacco warehouse on the premises with full knowledge of the limited estate of lessor and required bonds of lessor to protect themselves against the termination of the lease by operation of law.

**4. Estates § 9a: Landlord and Tenant § 15½—**

The fact that lessees of a life tenant are permitted to remain in possession for several months after the death of the life tenant before institution of action by the remaindermen to assert their title, does not bar the remaindermen or constitute an acquiescence by them in a provision of the lease giving lessees the right to remove improvements, since upon the death of the life tenant the lease is void and is not subject to confirmation by the remaindermen.

APPEAL by the plaintiff and the defendants Briggs, Middleton, Rigsbee, Fulford and Bitting, from *Frizzelle, J.*, at June Term, 1946, of DURHAM. Modified and affirmed.

This was a petition for the sale for partition of certain real property in Durham by the surviving children and remaindermen under the will of the late Atlas M. Rigsbee. The proceeding was instituted 5 March, 1946.

The property described in the petition was devised by the testator to his daughter Sallie A. Rigsbee for life with remainder in fee, on failure of issue, to the testator's surviving children. These are all parties to the proceeding. Sallie A. Rigsbee died unmarried and intestate 19 September, 1945.

In this proceeding F. G. Satterfield, J. G. Satterfield and Walker Stone, doing business under the firm name of Satterfield & Stone, were permitted, over objection, to intervene. They filed pleadings alleging that pursuant to certain leases executed to them by Sallie A. Rigsbee on two of the lots described, in 1925 and 1935, renewed in 1944, they had erected two large tobacco auction warehouses (both under same roof), at a total approximate cost of some $73,000, and that by the terms and provisions of these leases they had the right to remove the buildings from these lots at the expiration of the leases or when by devolution of the title the leases were terminated. They asked authority of the court to remove the buildings.

The parties to the original proceeding denied the interveners' right to the buildings on the ground that whatever rights the interveners had

under the leases expired at the death of the lessor, that none of the remaindermen was party to either of the leases, and that the buildings were permanent structures and erected with full knowledge and understanding that Sallie A. Rigsbee had only a life estate in the lots leased to them. They further allege that interveners had protected themselves against the contingency of the falling in of the life estate during their term by requiring substantial bonds from the lessor.

It was admitted that interveners used the buildings erected by them on the leased lots as tobacco auction warehouses, known as Liberty Warehouse 1 and 2, during the entire period covered by the leases, and since the death of the life tenant have continued to occupy and use the warehouse during the tobacco marketing seasons of 1945 and 1946. No consent to its use, or waiver of any right by any of the remaindermen was shown. The lease of 1925 was for fifteen years with privilege of extension for five years additional. The lease of 1935 was for ten years, and the lease of 1944 was for five years. The annual rental began with $2,800, and the highest was $4,280, but the amount was made subject to the varying conditions of the tobacco market.

It was not controverted that the buildings referred to were erected on concrete foundations, with 100,000 feet of floor space, partially concrete. It was stated that the buildings covered half a city block.

Each of the leases contained the provision that in consideration of the fact that the lessor had only a life estate in the lots, the lessor should give bond in penal sums of $30,000, $5,000, and $35,000, respectively, conditioned upon lessees' peaceful occupancy, with further condition that "if by reason of the death of the lessor during said term, or if for any cause lessees shall be put out of possession of said premises," the obligation to be in full force.

Judge Frizzelle heard the matter on the appeal from the order of the clerk permitting interveners to be made parties, and also on the merits as to the rights of the parties under the allegations in the pleadings, and, after finding the facts, adjudged that interveners were proper and necessary parties, and further that the buildings erected by the interveners on the leased lots were trade fixtures and as such the personal property of the interveners, and that they were entitled to remove them within a reasonable time after the death of the life tenant.

The plaintiff and defendants remaindermen excepted and appealed.

*Brawley & Brawley, Victor S. Bryant, and Egbert L. Haywood for the appellants.*

*Fuller, Reade, Umstead & Fuller, Basil M. Watkins, and A. H. Graham, Jr., for appellees.*

DEVIN, J.   There was no controversy as to the facts.   The question of law presented is whether the lessees of the life tenant, after the death of their lessor, were entitled, as against the remaindermen, to remove the buildings which had been erected by them on the leased premises.

It was provided in each of the leases that all improvements and fixtures placed on the premises by the lessees should remain the property of the lessees, with right of removal, at the termination of the leases whether by expiration of time or by act of law, within a reasonable time. But the remaindermen were not parties to either of the leases and were not bound by any of the terms wherein expressed.   As to these leases the remaindermen were strangers.   There was no privity between the lessees and the present owners of the fee.   Upon the death of the life tenant the title to the real property passed by operation of law to the remaindermen unaffected by any leases the life tenant had executed or any agreements she had made with respect thereto.   The life tenant could not create an estate to endure beyond the termination of her own estate, nor could the lessees thereafter claim any rights under her leases. Tiffany Real Prop., 3rd Ed., 247; *Armstrong v. Rodemacher,* 199 Iowa, 928; *Matter of O'Donnell,* 240 N. Y., 99; *Jones v. Shufflin,* 45 W. Va., 731, 31 S. E., 934.   So that, upon the death of Sallie A. Rigsbee, nothing else appearing, the remaindermen were entitled to the immediate possession of the lots described,. and also to all structures placed thereon and so attached to the freehold as to constitute a part of the realty.

Recognizing these principles of law, the interveners, the lessees of the life tenant, however, base their claim upon the general principles of law relating to trade fixtures, and contend that under the circumstances of the case the buildings erected by them come within the definition of trade fixtures, and independent of any express agreement the structures were stamped with the character of personal property, and hence removable at their option.   They contend that this position is available to them against the remaindermen.

In view of the fact that the buildings here claimed by the interveners consist of two large warehouses under one roof, erected on concrete foundations, with 100,000 feet of floor space, covering half a city block, it is somewhat difficult to conceive of them as personal property, but conceding that under the rule stated by *Mr. Justice Story* in *Van Ness v. Pacard,* 27 U. S., 137, and by virtue of the agreement between the life tenant, lessor, and the lessees, they may be so regarded, it would seem to follow that within the period covered by the leases and during the lifetime of the lessor the lessees would have had the right to remove the buildings from the lots described, if this could have been done without injury to the freehold.   *Olymphia Lodge v. Kelly,* 142 Wash., 93; *Davidson v. Mfg. Co.,* 99 Mich., 501; *Schultz v. Motor Co.,* 243 Ky., 459; *Pennington v. Black,* 261 Ky., 728.   But we do not think, under the

circumstances of this case, this right can now be maintained against the remaindermen. They were in no wise bound by the leases, and to them the fee simple unencumbered title to the real property passed under the will of Atlas M. Rigsbee immediately upon the falling in of the life estate. The erections were by those who were strangers to the title as thus devolved and without privity.

The general principles of law relating to the question presented by the appeal in this case have been frequently stated. From 36 C. J. S., 967, we quote: "A lessee from the tenant for life has no greater rights than the tenant for life himself. The lessee's rights cannot be increased by an agreement with the tenant for life, not assented to by the remainderman, giving the lessee the right of removal." In 22 A. J., 744, it was said, "Where the fixtures are of such a character that, in the absence of any contract on the subject, they constitute, in law, a permanent accession to the estate, it has been held that a tenant for life cannot, by contract with his tenant, so far bind the remainderman as to authorize the removal of such fixtures by his lessee after the termination of the life estate." From 1 Tiffany Real Prop., 3rd Ed., page 88, we quote: "Since a tenant for life cannot, in the absence of an express power, create an estate extending beyond the measure of his own estate, it follows that if such tenant leases for a term of years, and the life estate comes to an end by reason of his death or of that of the çestui que vie, the interest of the lessee also comes to an end, and he cannot retain the possession against the reversioner or remaindermen. Even though the reversioner or remainderman desires to continue or to revive the lease made by the life tenant, he cannot do so, since he is not in privity with the latter." And again from the same author, page 247: "In the absence of a statutory power or of an express power to that effect in the creation of the estate, one having a limited estate in land cannot, as against the person entitled in reversion or remainder, create an estate to endure beyond the normal time for termination of his own estate. This self-evident principle has been applied in the case of the making of a lease for years by a tenant for his own or another's life, the rights of the remainderman or reversioner being recognized as superior to any claim on the part of the lessee."

In *Sanders v. Sutlive Bros.,* 187 Iowa, 300, the first headnote states the pertinent holdings in these words: "A lease made by a life tenant terminates upon his death." In the annotation of this case in 6 A. L. R., 1513, the cases cited as holding fixtures erected by lessee of life tenant not removable after death of lessor are *Jones v. Shufflin,* 45 W. Va., 729; *White v. Arndt,* 1 Whart. (Pa.), 91; *Demby v. Parse,* 53 Ark., 526; *Hafflick v. Stober,* 11 Ohio St., 482; while *Ray v. Young,* 160 Iowa, 613, holds the contrary view.

In *Jones v. Shufflin,* 45 W. Va., 729, it appeared that after the death of the life tenant the lessee sought to remove a building which he had erected on a lot leased him by the life tenant. The lessee's claim was based on the law of fixtures. The Court said: "The law is well settled that the remainderman is entitled to the property with all improvements thereon at the expiration of the life tenancy. . . . This rule prevails more strictly between tenant for life or his lessee and the remainderman, the latter of whom is not bound by any agreement between the tenant for life and his lessee under which the lessee may have erected buildings on the land. The plaintiff, being entitled to the remainder, and not having consented to the lease, is in no wise bound thereby, and the improvements come to her as though they had been placed thereon by a stranger. If a building is erected on land against the will of the landowner, or without his consent, it becomes realty, and cannot be removed therefrom without the commission of waste. The defendant in this case acted with open eyes."

In *Matlock v. Kline,* 280 Mo., 139, the Court used this language: "The unquestioned limitation of the estate of the life tenant does not preclude him from making a lease for any number of years, as it will be held valid only during his life, terminate at his death, and have no effect upon the estate of the remainderman."

The question involved in *Hafflick v. Stober,* 11 Ohio St., 482, was the claim of the lessee of the life tenant after the determination of the life estate to remove a barn erected by him on leased premises. This was denied under authority of *White v. Arndt,* 1 Wharton's Rep., 91, the Court holding the remainderman "was not bound by any agreement between the tenant for life and his lessee under which the lessee may have erected buildings on the land." The Court in this case also said: "The general rule is, that the tenant must remove fixtures put up by him before he quits the possession on the expiration of his lease; if not removed during the term, they become the property of the landlord (citing authorities). In the case of tenants for life and at will, however, whose terms, from the nature of the tenancy, are of uncertain duration, this rule is relaxed, and they, or their representatives, have been allowed the right to remove fixtures after the expiration of their term. *Lawton v. Lawton,* 3 Atk., 13. But cases of this kind have, so far as we can ascertain, been confined to fixtures which the tenant was entitled to remove as a matter of legal right, without reference to any contract on the subject; and *White v. Arndt,* above referred to, is a direct authority against the extension of such right of removal, after the expiration of the term, to things which cannot be removed except in virtue of a special contract."

Apparently the Court here sought to draw a distinction between those cases where personal property as such was attached to the freehold, and

those cases where the fixtures were essentially realty and could be regarded as personalty only by reason of a special contract to that effect. We deem it unnecessary here to pursue this line of distinction or rest our decision upon it. We think the effect of the death of the life tenant was the extinguishment of the estate for years. *Matter of O'Donnell,* 240 N. Y., 99. See also *Stewart v. Matheny,* 66 Miss., 21; *Sanders v. Sutlive Bros.,* 163 Iowa, 172; *Scurry v. Anderson,* 191 Iowa, 1058.

The interveners cite *Ray v. Young,* 160 Iowa, 613, in support of their position. In that case the facts were in many respects similar to those in the case at bar. The defendant Young rented in 1909, a shop on a lot belonging to the life tenant for one year with privilege of five with "privilege of adding to this building and removing same at expiration of lease." The rent was paid to 1 January, 1912. Lessee erected a building for use as garage and repair shop in good faith and without knowledge that the lessor had only a life estate. The life tenant died June, 1911, and the defendant remained in possession throughout 1911 with the acquiescence of the remainderman. Thereafter lessee's attempt to remove the building he had erected was restrained at the suit of the remainderman. The Supreme Court reversed, the Court holding that the lessee had a reasonable time after the death of the life tenant within which to remove the building. In coming to this conclusion the Court seems to have been influenced by what it regarded as the equitable rule, under the facts of that case, as against what it termed the absolute legal right of the remainderman.

In the case at bar, however, the interveners took their lease and erected permanent buildings with full knowledge that the lessor had only a life estate. It was so stated in the leases. And to protect themselves against the contingency of the death of the life tenant during the term they required of her bonds aggregating $70,000. The penalty of these bonds was to be decreased each year conformable to the length of the term "to the date or time when the lessees shall be put out of possession of said property."

The interveners also cite *Merrell v. Garver,* 54 Ind. App., 514, but we do not think this case lends material support to their position. There the assignee of the lessee was held entitled to claim a barn and shed as personalty against the remainderman, but the lease and contract under which the buildings were erected, with right of removal, were executed by the ancestor from whom the remaindermen derived their title. In that case the Court said: "It may be stated as a general proposition of law that permanent improvements made by a life tenant cannot be charged to the remainderman without his consent, express or implied, and that upon the termination of the life estate such improvements pass as part of the realty." See also *Bache v. Coal Co.,* 127 Ark., 397.

The doctrine of fixtures has been frequently considered by this Court, but none of the decisions bear directly on the question here presented. These cases usually arose out of the relationship of landlord and tenant, or where the claim for the removal of fixtures which had been attached to the freehold by the tenant was based upon an agreement or understanding express or implied on the part of the owner. *Pemberton v. King,* 13 N. C., 376; *Feimster v. Johnson,* 64 N. C., 259; *Moore v. Vallentine,* 77 N. C., 188; *Sanders v. Ellington,* 77 N. C., 255; *Overman v. Sasser,* 107 N. C., 432, 12 S. E., 64; *Causey v. Plaid Mills,* 119 N. C., 180, 25 S. E., 253; *Causey v. Orton,* 171 N. C., 375, 88 S. E., 513. See also *Greenville v. Base Ball Club,* 205 S. C., 495, 32 S. E. (2d), 777.

There is authority for the position that by agreement between the lessor and lessee with respect to fixtures attached to the land for the purpose of trade, so as to constitute trade fixtures within the meaning of the law, structures which would otherwise be classified as realty may become impressed with the character of personalty even as against third parties. But we do not think the circumstances here are such as to invoke that principle in favor of the interveners. *Hafflick v. Stober, supra; Jones v. Shufflin, supra.* In *R. R. v. Deal,* 90 N. C., 110, the right of the railroad, after abandonment of right of way, to remove a depot building, as against the claim of the owner of the land, was upheld. And in *Springs v. Refining Co.,* 205 N. C., 444, 171 S. E., 635, involving rights to fixtures as between landlord and tenant, *Chief Justice Stacy* in writing the opinion upheld "the right of the tenant to show the intention of the parties, if contrary to the strict rules of the common law."

It seems to be generally held that what is a fixture and its incidents are to be determined by the manifested intention of those concerned. *Pennington v. Black,* 261 Ky., 728; *Meig's Appeal,* 62 Pa., 28; *Davis v. Eastham,* 81 Ky., 116; *In re Shelar,* 21 F. (2), 136; *Cameron v. County Gas & Oil Co.,* 277 Mich., 442; *Demby v. Parse,* 53 Ark., 526; *Biallas v. March,* 305 Mich., 401; *Schultz v. Motor Co.,* 243 Ky., 459; *San Diego Bank v. San Diego Co.,* 105 P. (2), 94; 77 A. L. R., 1400. However, as was said in *Dobschultz v. Holliday,* 82 Ill., 371, "No doubt the parties could agree among themselves they would treat the engine and other fixtures as personalty, but their private agreement could not change the character of the property so far as the remaindermen were concerned." This statement was quoted with approval in *U. S. v. 19.86 acres of land,* 141 F. (2), 344.

There is no privity here between the lessees of the life tenant and the remaindermen. In *Bogle v. R. R.,* 51 N. C., 419, *Chief Justice Pearson* remarked, "If a tenant for life of land make a lease for years and dies, the term for years is so utterly void as not even to be capable of confirmation by the remaindermen." On death of the life tenant her lessee did not become the lessee of the remaindermen. "In absence of any

HAYWOOD v. BRIGGS.

agreement between the parties there is no obligation on the part of the lessor to pay the lessee for improvements erected by the lessee upon the demised premises, though the improvements are such that by reason of annexation to the freehold they become part of the realty and cannot be moved by the lessee." *Barnhill, J.,* in *Brown v. Ward,* 221 N. C., 344, 20 S. E. (2d), 324, quoted with approval in *Pitt v. Speight,* 222 N. C., 585, 24 S. E. (2d), 350. What was said in *Belvin v. Paper Co.,* 123 N. C., 138, 31 S. E., 655, with respect to rights of the lessee to remove fixtures from the land may not be held applicable to a lessee of the life tenant who has died and where rights of remaindermen have intervened, in respect to buildings of the character shown in this case. The personal property of the lessees and those articles used in connection with the premises but which did not become a part of the realty did not pass to the remaindermen. See also *Best v. Hardy,* 123 N. C., 226, 31 S. E., 391. Articles of personal property affixed to the freehold for the better temporary use of the realty are usually treated as trade fixtures, and the intent with which they are so placed becomes material. *Horne v. Smith,* 105 N. C., 322, 11 S. E., 373.

While the decision of the question here presented, and ably argued on both sides, is not without difficulty, we reach the conclusion that we should not depart from the well settled principles of the law of real property in order to aid the interveners in a situation in which they have been placed as result of a contingency which they had fully considered, and against which they undertook to make provision by the requirement of bonds from their lessor. Nor may the fact that interveners remained in possession for several months before action was taken by remaindermen to assert their title be held to bar them or constitute acquiescence. *Stewart v. Matheny,* 66 Miss., 21.

For the reasons stated, the ruling of the court below that interveners were entitled to remove the buildings from lots 1 and 2 described in the petition must be held for error. So much of the judgment below as adjudges the title of appellants to the land described in the petition and remands the cause to the clerk of the Superior Court of Durham County for further orders with respect to the sale of said lands is affirmed. The costs of the appeal will be taxed against the interveners.

Modified and affirmed.