Egbert L. HAYWOOD, Executor of the Estate of Mrs. Zoa Lee Haywood, Deceased, Appellant,

v.

Edwin GILL, Former Collector of Internal Revenue for North Carolina and Former Director of Internal Revenue for the District of North Carolina, Appellee.

No. 8739.

United States Court of Appeals Fourth Circuit.

Argued Nov. 6, 1962.

Decided Jan. 23, 1963.

Emery B. Denny, Jr., Durham, N. C. (Egbert L. Haywood and Haywood & Denny, Durham, N. C., on the brief), for appellant.

Morton K. Rothschild, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Marselli, Attys., Dept. of Justice, Robert H. Cowen, U. S. Atty., and Alton T. Cummings, Asst. U. S. Atty., on the brief), for appellee.

Before SOPER and BELL, Circuit Judges, and BUTZNER, District Judge.

BUTZNER, District Judge.

The sole question presented by this appeal is the determination of the date of acquisition of real estate for the purpose of computing capital gains resulting from its sale. The taxpayer's [1] father, Atlas M. Rigsbee, died testate in 1903. He devised the real estate to Sallie A. Rigsbee, for life with remainder in fee, on failure of issue, to the taxpayer and other surviving children.

The District Court decided that the taxpayer acquired the property in 1903 when the testator died. The taxpayer urges that the date of acquisition was 1945 when the life tenant died.

At the time of Atlas M. Rigsbee's death in 1903 the land had tenant houses upon it. In 1925 Sallie A. Rigsbee leased a portion of the real estate devised to her as life tenant. The lessees improved the land by erecting tobacco warehouses on it. Under the terms of the lease, all improvements placed upon the land were to remain the property of the lessees and were to be removable by them. From time to time Sallie A. Rigsbee executed renewal leases which contained the same provision. Such a lease was in effect at the time of her death.

Upon another portion of the land Sallie A. Rigsbee erected a drugstore in 1939 at her own expense.

Sallie A. Rigsbee died in 1945 and the taxpayer and other remaindermen came into possession of the real estate. Thereafter the taxpayer brought suit against the other remaindermen for partition of the real estate. The lessees of the property intervened to seek removal of the tobacco warehouses which they had erected. The Supreme Court of North Carolina held that the taxpayer and other remaindermen were entitled to the warehouses and that the lessees could not remove them. Haywood v. Briggs, 227 N. C. 108, 41 S.E.2d 289 (1947).

The drugstore property was sold in 1946 and the warehouse property in 1947. The taxpayer reported for these years the capital gains that she received upon her share of the proceeds from the sale of the properties. In computing the capital gains, however, the taxpayer used as a basis the value of the real estate and the improvements in 1945, the year in which the life tenant died.

The Government [2] determined a deficiency on the ground that the taxpayer acquired the property in 1903, the year of her father's death. Since the testator died before the enactment of the Six-

---

1. The taxpayer, Mrs. Zoa L. Haywood, died in June 1956 and her executor was substituted as party plaintiff.

2. For convenience, the former Collector and the former Director of Internal Revenue, and the Commissioner of Internal Revenue are referred to as the Government.

teenth Amendment and the Income Tax Act of 1913, the Government valued the property as of March 1, 1913 pursuant to Section 113(a) (14) of the Internal Revenue Code of 1939.[3]

The Government computed the basis of the drugstore property by adding the depreciated cost of the drugstore erected by the life tenant in 1939 to the fair market value of the land on March 1, 1913.[4]

The Government determined the basis of the warehouse property to be the fair market value of the land on March 1, 1913. In computing the basis, nothing was allowed for the warehouses.

The taxpayer paid the assessment under protest and instituted this action for its recovery. The District Court held that the applicable date for the valuation of the land was March 1, 1913 and granted summary judgment for the Government.[5] We affirm the District Court.

This case is governed by Section 113 (a) (5) of the Internal Revenue Code of 1939, which provides in part:

"(5) *Property transmitted at death.*—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *"

Section 29.113(a) (5)—1(b) (1) of Treasury Regulations 111 (1939 Code) defines the time of acquisition:

" * * * Since, under the law governing wills and the distribution of the property of decedents, all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of him who takes the title was, at the date of death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise, the time of the acquisition of such property is the death of the decedent. * * *."

The taxpayer contends that the regulation is not applicable to the situation presented by this case because not until 1945, upon the death of the life tenant without issue, did any "acquisition" take place. She says that it was only then that she acquired possession and the attributes of ownership. She also points out that the warehouses on a portion of the property were not in existence until 1925 and could not have been acquired in 1903 by the taxpayer.

The argument presented by the taxpayer has been foreclosed by Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941). In that case the taxpayer's father died in 1918, leaving him a contingent remainder in a testamentary trust. The taxpayer received his share of the trust in 1934. Some of the securities distributed at that time had been received by the trustee from the decedent's estate and others had been purchased by the trustee between 1918 and 1934. After distribution, the taxpayer sold some of the securities. He

---

3. This section provides: *Property acquired before March 1, 1913.*—In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted (for the period prior to March 1, 1913) as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such market value. * * *"

4. The use of the depreciated cost of the building in determining the basis is not an issue in the case.

5. In a companion case, Denny, etc. v. Gill, etc., Civ. No. 833, E.D.N.C., the District Court granted the Government's motion for summary judgment and submitted to a jury the question of the value of the properties as of March 1, 1913. In the present case the parties stipulated that if March 1, 1913, is the applicable valuation date, the value fixed by the jury in the companion case will be accepted. They also stipulated, subject to the taxpayer's right to appeal, that the decision on the motion for summary judgment in favor of the Government in the companion case should be adopted as the ruling of the District Court in this case. Judgment was entered on the stipulation.

used as the basis for computing gains and losses the value of the securities on the date of distribution. The Supreme Court held that the basis of the securities received by the trustee from the decedent's estate was the value of the securities at the time of decedent's death in 1918. The basis of the securities purchased by the trustee was held to be the cost to the trustee. In approving a Treasury regulation, which was similar to the regulation applied in this case, the Supreme Court said at page 434, 61 S.Ct. at page 974:

"Respondent's suggestion that the regulation does not cover this case will not stand analysis. It has a broad sweep and embraces all interests which have their origin in a bequest, devise, or inheritance."

The District Court correctly applied the principles expressed in Helvering v. Reynolds, supra. It is clear from that case and from the regulation that the time of acquisition of property acquired by devise is the death of the testator even though the devise is a contingent remainder. The fact that in 1903 and in 1913, the warehouses were not in existence does not preclude the application of this rule. These improvements were received by the taxpayer at no cost to her or to the life tenant by virtue of the interest that the taxpayer acquired in the land upon the death of her father in 1903.[6]

The situation concerning the drugstore property is somewhat different. The life tenant paid for the building and the Government allowed the depreciated cost of the building as an addition to the value of the land in 1913 in computing the basis. This method of determining the basis is consistent with the holding in Helvering v. Reynolds, supra, where upon sale by the contingent remainderman, the basis of securities purchased by the trustee was held to be the cost to the trustee.

The fact that Helvering v. Reynolds, supra, involved personal property and the present case involves real estate is of no significance. The statute and the regulation embrace both kinds of property without suggesting that any distinction should be made.

Affirmed.

---

6. Haywood v. Briggs, 227 N.C. 108, 41 S.E.2d 289 (1947).